# CHARLESTON.

## WINDON v. STEWART.

### Decided December 15, 1900.

1. APPEAL—*New Pleadings—Procedure.*

   When a question of law or fact is definitely determined by the Supreme Court, and the case remanded to the circuit court for further proceedings, a party cannot, by new pleadings or evidence, re-open that question. (p. 490).

2. RES JUDICATA—*Final Determination.*

   In order that a former decision shall operate as *res judicata*, it must be certain and clear that the precise question was definitely and finally determined; it cannot be made out by inference or argument. (p. 490).

3. SETTLEMENT OF ACCOUNT—*Measure of Relief.*

   A bill to surcharge and falsify an *ex parte* confirmed settlement of a fiduciary does not overhaul the account, and restate all its items, but deals only with those items surcharged and falsified. In other respects the former account stands firm, as does also the balance shown by it, and the sum of items successfully surcharged and falsified is the measure of relief on such a bill. (pp. 490, 491).

4. COMPOUND INTEREST—*Guardian.*

   Compound interest is not charged to a guardian after the close of the guardianship. (p. 493).

5.  EXCEPTION—*Error Apparent.*
> No exception to a commissioner's report in either the circuit
> court or Supreme Court is necessary as to error apparent on
> its face.  (p. 493).

Appeal from Circuit Court, Harrison County.

Action by Ingaby M. Windon against William A. Stewart and others.  Judgment for plaintiff, and defendant Stewart appeals.

*Reversed.*

JOHN BASSEL, for appellant.

LEWIS C. LAWSON, for appellee.

BRANNON, JUDGE:

As will be seen in 43 W. Va. 711, (28 S. E. 776), this is a suit by Ingaby M. Windon against William A. Stewart to surcharge and falsify accounts of Stewart as her guardian.  When the case went back from this Court to the circuit court of Harrison the account was re-committed to a commissioner, and upon his report a decree for the plaintiff was pronounced, from which Stewart appeals.

Stewart complains that payments made by him in improvements, in cutting filth and otherwise, have been disallowed. These credits were definitely disallowed by our former decision, as we were of opinion that they were such improvements as a tenant was required by law to make without pay.  But counsel for Stewart now says that no question of that kind had been raised in the circuit court prior to our decision, and that the right to credit for such improvements was not denied in the circuit court, but it was only claimed that they were worth nothing.  The bill charges that the settlements contained numerous items allowed to the credit of the guardian for "improvements" and "work done on farm," branding them as "false," "improper and erroneous," and "illegal" and "excessive," and alleging that they should not have been allowed, and explicitly and elaborately falsifying them.  There could scarcely be a stronger or more explicit protest against these items than that made by the bill. Their amounts were specified and to whom paid.  The legal reason that they were not allowable, that is, that they should have been done free of charge by the tenant, is not given, it is true;

but that is matter of law, not necessary or proper to put in a pleading. The answer of Stewart denied that these items were improperly allowed, and thus there was a plain issue made upon them. This Court considered these items and definitely held that they had been improperly allowed the guardian, and our decision is *res judicata* as to them.

When the case went back to the circuit court, Stewart for the first time presented a written lease providing that the tenant should be "credited on the rent with all improvements and repairs." The question whether these improvements should be allowed was plainly involved in the pleadings, and Stewart was bound to present this paper as evidence before the hearing, and it is too late to do so after a final decision upon that issue by this Court. "When a question of law or fact is once definitely settled and determined by decree of this Court, and the cause is remanded for further proceedings, the party cannot by subsequent pleadings call in question the conclusiveness of the questions determined by said decree." *Seabright* v. *Seabright,* 33 W. Va. 152; *Henry* v. *Davis,* 13 *Id.* 230; *Camden* v. *Werninger,* 7 *Id.* 528. If you cannot elude such decision by new pleadings, for a stronger reason you cannot by new evidence; for the decision covers all things and evidence that were in the case, and all evidence which, under the pleadings, might have been put in the case. *McCoy* v. *McCoy,* 29 W. Va. 794; *Wandling* v. *Straw,* 25 *Id.* 692; *Cromwell* v. *County,* 94 U. S. 351. So, if this lease were ever so forceful, it could not be considered now; but it is of no force, as it does not specify what improvement and repairs would be allowed, and would be construed to refer to permanent improvements and repairs, not those things which the tenant would be bound by law to do. The language is not definite enough to change what would otherwise be the legal rule.

The next matter is as to a charge of two hundred and fifty-six dollars and thirty-six cents against the guardian by the decree for board and clothing furnished the ward. We held in the former decision that as the ward was a daughter of Stewart, and performed service for him, he could not make this charge. That matter is closed. But it is claimed that this charge operates to double charge him with that amount. It is contended, on the other hand, that even if this be so, our former decision precludes the review of this matter. I hardly think so. The opinion does not indicate that it was intended to be final as to this claim of

double charge, but indicates that it was a matter to be investi-
gated upon a re-committal to a commissioner. It might have
been, should have been, clearer. It does say that no double
charge in that item was perceived; but the intent was not clearly
final. To say the least it is not clear that it was the intent (as it
was not) to be final; and the law is that to work an estoppel by
record, it "must be certain to every intent." 1 Greenl. Ev. s. 22.
As the effect of estoppels *may* be to shut out the truth, they are
not to be favored or extended by mere construction, and will not
be made out by mere argument or inference. 1 Herm. Estop. 24,
s. 4; 4 Kent 261 n. Especially where *res judicata* is sought to be
based on a mere opinion, it ought to be clear that it was meant
to close the point, in cases where there is reversal and a remand
for further proceedings by re-accounting. The former decision
is no *res judicata* as to this matter of double charging, as it was
meant to be left open for the commissioner on re-committal. I
do not yet see that in the item of two hundred and fifty-six dol-
lars and thirty-six cents alone and *per se* there is double charge;
for the guardian having been wrongly allowed for board and
clothing credits from which that sum comes, it is not a wrong
process to make it a charge against him; but I am of opinion
that there is a double charge by the decree. A suit to surcharge
and falsify settlements does not overhaul them. When con-
firmed they are *prima facie* correct and stand still surcharged and
falsified, and when surcharged and falsified, they stand still
valid, except so far as successfully surcharged and falsified. The
last confirmed settlement before commissioner Adams found a
balance due the ward of one hundred and sixty-five dollars and
twelve cents. That amount stands in her favor by force of that
settlement. Such balance as may be found due 'from her guar-
dian by reason of surcharge and falsification of settlements be-
fore Adams will also stand in her favor. In the Adams' settle-
ments Stewart is charged with moneys received, other than rent,
amounting to three hundred and sixty-nine dollars and ninety-
nine cents. Commissioner Thompson says two hundred and
fifty-nine dollars and ninety-nine cents, but he omits the Devers
money, one hundred and ten dollars. That balance of one hun-
dred and sixty-five dollars and twelve cents includes those mon-
eys. In the decree of 23rd September, 1895, Stewart is charged
with four hundred and ten dollars and twelve cents, which sum
includes the three hundred and sixty-nine dollars and ninety-

nine cents, and thus that three hundred and sixty-nine dollars and ninety-nine cents is twice charged to Stewart—charged in the Adams settlements, and re-charged in the decree. That decree was reversed but when the commissioner made his report after reversal he took the sum allowed by it against Stewart one thousand three hundred and eighty-four dollars and sixty-two cents, deducted from it rent which had been charged to Stewart in former report, but which this Court held improper, two hundred and ninety dollars and ninety-three cents, added improper allowance for improvements and interest three hundred and three dollars and seventy-five cents, leaving one thousand three hundred and ninety-seven dollars and forty-four cents on 23rd September, 1895, added interest to date of decree (two hundred and twenty dollars and thirty cents), leaving the ward one thousand six hundred and seventeen dollars and seventy-four cents; then deducting costs (three hundred and twenty-five dollars and fifteen cents), leaving balance to ward one thousand two hundred and ninety-two dollars and fifty-nine cents, and for this balance the decree was rendered involved in this appeal. This shows that the first decree including those moneys is the basis of the last decree, with certain deductions, but not deducting the three hundred and sixty-nine dollars and ninety-nine cents. Stewart thus pays that money in being responsible for one hundred and sixty-five dollars and twelve cents, the balance in Adams' settlement, and pays it again in the decree for one thousand two hundred and ninety-two dollars and fifty-nine cents. These moneys charged to Stewart by Adams being the same entering into the four hundred and ten dollars and twelve cents, there is double charge of three hundred and sixty-nine dollars and ninety-nine cents. The difference (forty dollars and thirteen cents) between three hundred and sixty-nine dollars and ninety-nine cents and four hundred and ten dollars and twelve cents likely was a reservation by attorneys, and never received by Stewart. At any rate, it cannot be charged to him, because there is no surcharge to justify it in the bill or in the paper "XYZ" to warrant it. The bill makes a general surcharge without specification. This will not do. *Corbin* v. *Mills,* 19 Grat. 438. That paper of further specification filed with the commissioner is allowable under that case; but it specifies only one item in Adams' settlement as a surcharge, the one hundred and ten dollars, charged September 27, 1884, when Adams charged it. It

was the proper amount of the Devers debt at that date. Thus the charge of four hundred and ten dollars and twelve cents and its interest, two hundred and sixteen dollars and twenty-nine cents, wrongly entered into the decree as debits against Stewart. A bill to surcharge and falsify, as I stated in the former opinion, does not revamp and re-state the prior settlements, but is addressed only to items surcharged and falsified—those improperly omitted or credited; and such items as may be successfully surcharged and falsified added together constitute the relief to which the party is entitled. *Shugart* v. *Thompson,* 10 Leigh 434; *Corbin* v. *Mills,* 19 Grat. 438, 465. This matter is not excepted to, but is fought by Stewart, and as it appears on the face of the report, he can rely on it without exception. *Kester* v. *Lyon,* 40 W. Va. 161.

There is some compound interest charged on rent and items improperly credited for board and clothing, after the ward became twenty-one, which is erroneous, as with the close of the guardianship the trust ends, and it is then only a matter between debtor and creditor. 1 Minor Inst. 486.

I think proper items entering into Adams' unconfirmed last report, which have not been allowed, should enter into a future account. It seems to me that two items, eight dollars and forty-one cents and nine dollars and seventy-two cents commission allowed in Adams' settlements, are wrong, because Stewart was too late in settling. There may be other items of compensation likewise, if specified.

The decree is reversed and the case remanded for another account.

UPON REHEARING.

A rehearing has not led us to a different conclusion from that announced in the foregoing opinion, and therefore it is re-announced.

DENT, JUDGE, *(Concurring)*:

The sole question presented in the petition for rehearing is relative to the matter of alleged double charges against the guardian. To properly present this question it becomes necessary to

review the whole of the guardian's accounts. These show the following charges against and disbursements by the guardian:

Rent of land, 1884, .................... $ 58.33 1-3
" " " 1885, .................... 58.33 1-3
" " " 1886, .................... 58.33 1-3
" " " 1887, .................... 58.33 1-3
" " " 1888, .................... 58.33 1-3
" " " 1889, .................... 66.66 2-3
" " " 1890, .................... 66.66 2-3

Total to last settlement, ............ $425.00

Disbursements:

Officers' fees, including clerk, sheriff, commissioner and printer, ............... $ 75.10
Taxes paid, ........................... 185.37
Guardian's charges and commissions, ..... 55.38
Amount paid Bassel, Atto.,............. 100.00
Saddle, .............................. · 5.90

$421.75

Balance, ............................. $ 3.25
Horse retained by ward, ............... 80.00

Disbursements in excess of rent, ........ $ 76.75

The officers' fees and taxes are legal charges against any fund the guardian may have in his hands, whether principal or income, although primarily they should be paid out of the income including rents, profits and interest. The guardian's charges for his time and trouble, to-wit, fifty-five dollars and thirty-eight cents, are certainly reasonable. While he may not have made all his settlements strictly in accordance with the law, yet the letter of the law must bend to its spirit as it was made to govern all estates, both large and small, and it operates harshly as to small estates sometimes to the injury of both guardian and ward. *Myers* v. *Myers,* 35 S. E. 868; *Maquire* v. *Doonan,* 24 W. Va. 507. The amount paid the attorney is a just disbursement, acknowledged by both the plaintiff and her husband. The saddle the plaintiff acknowledges to have been purchased for her at her

instance, and was a necessity for her use, she residing in the country and needing it. The horse was furnished the plaintiff shortly before she became twenty-one years of age, and she has retained it since and ratified and confirmed its purchase. "Where the act of the guardian is not fraudulent, but is unauthorized, the ward at his majority may elect either to ratify or reject it, unless the court has previously confirmed it. If he repudiates the transaction he must first resign whatever benefit he has received through it." 9 Am. & En. En. Law, 150; *Wallis* v. *Neale,* 43 W. Va. 529. The only other fund that came into the guardian's hands and for which he was chargeable is the sum of three hundred and sixty-nine dollars and ninety-nine cents received from Bassel, his collecting attorney at different times, who retained forty dollars and thirteen cents presumably as the commissioner reports as fee for his services in making the collections. This makes the sum of four hundred and ten dollars and twelve cents charged by the circuit court as principal received by him which he was not authorized to disburse, and applying the rent as above indicated leaves this as the only fund out of which the guardian could have paid the one hundred and ninety-six dollars and seventy-seven cents improvements and the two hundred and fifty-six dollars and thirty-six cents education and maintenance. Deducting from the two hundred and fifty-six dollars and thirty-six cents the compound interest leaves only the sum of one hundred and seventy-nine dollars and forty-two cents as the actual disbursement by the guardian. Adding together these two sums makes the total sum of three hundred and seventy-six dollars and nineteen cents held to have been disbursed by the guardian improperly out of said sum of four hundred and ten dollars and twelve cents, and when the guardian has been charged up with this full sum of four hundred and ten dollars and twelve cents he should not be charged with either of the sums representing improvements or education and maintenance; otherwise there is a double charge against him. The result is the same, it matters not which fund we charge his just disbursements. The law applies them to the fund from which they should be primarily paid, to-wit, the rent of the land. The total charges against him up to and including 1900, is the rent account, four hundred and twenty-five dollars, and the cash account, four hundred and ten dollars and twelve cents, making a total, eight hundred and thirty-five dollars and twelve cents. Deducting from this his dis-

bursements without the horse, four hundred and twenty-one dollars and seventy-five cents, and we have a balance, four hundred and thirteen dollars and thirty-seven cents, three dollars and twenty-five cents of which is disbursable on the horse, leaving the four hundred and ten dollars and twelve cents from which deducting the retained attorney's fee, forty dollars and thirteen cents, leaves the proper principal with which the guardian is chargeable the sum of three hundred and sixty-nine dollars and ninety-nine cents. The guardian having no funds to apply to these improvements or for the education and maintenance of the plaintiff, he should not be charged with them for he can only be charged with the funds received by him, or lost by his negligence. This attorney's fee of forty dollars and thirteen cents is not shown to have been received by him or lost by his negligence, but could be easily established by the commissioner taking the evidence of the attorney who retained it. The guardian is further chargeable with one hundred and sixty-five dollars and fifty-five cents rent accruing after the land was divided, the same now being *res adjudicata,* having been settled by the former appeal. This amount is due from her father to her guardian, as he occupied and used the land while she and her husband resided with him, and was supported by him during pregnancy. This, however, would be subject to a credit of the balance due on the horse as heretofore shown. Simple interest only can be calculated on any of these sums after the ward arrives at maturity. The same may be said with regard to the improvements and also the maintenance and education, including clothing. All these sums, to-wit, the sum of one hundred and seventy-nine dollars and forty-two cents for clothes and schooling, one hundred and ninety-six dollars and seventy-seven cents for improvements, and one hundred and sixty-five dollars and fifty-five cents, amounting to five hundred and forty-one dollars and seventy-four cents are proper charges in favor of the guardian against the father of the plaintiff, Robert M. Stewart, who is a party to this suit as one of the sureties on the guardianship bond, and as to this amount with proper interest thereon he should be treated as the principal debtor to the plaintiff to the relief of the guardian and the other surety. These being trust funds paid to the father for the benefit of the daughter, and she now repudiating such payment, they should be repaid to the guardian at the same rate of interest the guardian is compelled to pay. Including such interest they will

greatly exceed in amount the sum that may be due from the guardian. Equity having the parties before them places the liability where it ultimately belongs.

The whole truth of this case is that the guardian virtually permitted the plaintiff's father to have the full benefit of plaintiff's estate, believing it to be beneficial and satisfactory to all the parties in interest, the father being of limited means and the daughter's duty toward him being mutual and reciprocal with his towards her. From her deposition she is only a nominal party to this suit, and had she fully understood it, she would probably never have instituted it, but she seems to have married a man who is willing to be supported by his wife's relatives. Many careful saving parents have had their declining years made unhappy by the grasping ingratitude of such thankless children by blood or marriage. *Myers* v. *Myers,* cited.

There is included in the guardian's account the sum of eight dollars and twenty cents for locust posts and coal sold off the land. Since he receives no allowance for repairs and improvements, he should not be charged with this amount, which is virtually covered by the rent.

To recapitulate, the guardian should be charged in this case as it now appears with the sum of four hundred and ten dollars and twelve cents, less forty dollars and thirteen cents, or three hundred and sixty-nine dollars and ninety-nine cents and one hundred and sixty-five dollars and fifty-five cents with legal interest on each of such sums, less seventy-six dollars and seventy-five cents, the balance due on the horse as credited as aforesaid, all of which, if he asks it, he will be entitled to recover back from Robert M. Stewart, one of his sureties and the father of plaintiff. In addition the guardian will be entitled to credit for his costs in his former appeal, three hundred and eighty-seven dollars and fifty-five cents, less sixty-two dollars and forty cents, or three hundred and twenty-five dollars and fifteen cents.

The decree is reversed according to the former holding of this Court and remanded to the circuit court to re-state the guardianship account as herein heretofore indicated and for further proceedings according to the rules and principles governing courts of equity.

*Reversed.*