McCORD v. ATLANTIC COAST LINE R. R.

1. Warehouse—New Trial.—Under the facts here, new trial, moved on the grounds: (1) that the goods 'were stored in a new warehouse covered with tin; (2) the house was located in a town having a fire department; (3) fire originated inside of building when employees were at supper properly overruled.

2. Ibid.—In case of destruction of goods in warehouse, it is incumbent on bailee to show how the fire occurred and that he exercised reasonable care.

*Rule of proving liability of warehouseman and how he is to relieve himself of it, stated.*

Before Gage, J., Darlington, Spring Term, 1906.   Affirmed.

Action by L. A. McCord against Atlantic Coast Line R. R.   From judgment for plaintiff, defendant appeals.

*Messrs. P. A. Willcox* and *W. F. Dargan,* for appellant. No argument furnished reporter.

*Mr. E. O. Woods,* contra, cites: *Burden of showing ordinary care is on warehouseman:* 29 S. C., 101; 65 S. C., 543. *He is only liable for negligence:* 11 Rich., 337; 2 Rich., 286.

March 28, 1907.   The opinion of the Court was delivered by

Mr. Justice Jones.   The plaintiff recovered judgment for three hundred and fifty-three and 37-100 dollars on the third cause of action set out in the complaint against the defendant as warehouseman, seeking to recover damages for the loss of a piano through defendant's negligence.   The defendant moved for a new trial on the minutes, which was refused, and the first, second and third exceptions allege error in such refusal.

The exceptions cannot be sustained, as it is not error of law to refuse to grant a new trial when there is any evidence

tending to support the verdict.    There was testimony tending to show that the piano was placed in the custody of defendant as a warehouseman at Darlington, S. C., on September 2, 1901; that it was destroyed by fire while in said warehouse, on October 30, 1901; that the fire broke out within the warehouse early in the evening, a few minutes after the warehouse was closed, and the agents and servants of defendant had gone to supper, except the night watchman; that when the fire was first discovered by strangers it could easily have been arrested if there had been any appliances at hand, such as fire extinguishers, buckets and provision for water, and that there was no such provision made, the water in the railroad tank being too inconvenient for ready use, even if buckets had been at hand; that the fire department of Darlington was late getting on the scene; that after the agents of defendant arrived on the ground the warehouse doors remained closed, and no effort was made to remove goods therefrom.    The circumstances upon which defendant relied to rebut negligence were (1) that the property was well stored in a new warehouse with tin roof; (2) that the warehouse was in a town having a fire department; (3) that the fire originated inside the building at an hour when the employees were at supper, and that the origin of the fire was unknown.    The defendant examined only Mr. Frank Pegues, the depot agent, who stated that he did not know how the fire originated; that when he went to supper that evening, a short while before the fire, he left Mr. Patterson, the chief clerk, there and another employee, Mr. Atkinson.    These witnesses were not examined, nor was the night watchman, Amos Leak, called as a witness.    The case was a proper one to be submitted to a jury, and it was not error of law to refuse to disturb the verdict.

The fourth exception alleged error in charging the jury, "That the railroad company was further required to show how the fire occurred," as under the pleadings and evi-

dence such charge might require an impossibility and tended to mislead the jury. The Circuit Judge in using the language was quoting from *Wardlaw* v. *R. R. Co.,* 11 Rich., 340. What Judge Watts really charged the jury was this: "If it is proven to your satisfaction that the piano came here on the railroad company's line and was turned into the depot and was lost by fire, then the railroad company must come before you and show how it was lost, and must show that they exercised ordinary care." * * * "You must take the time and place and business of the parties and all that is said and done, the lay of the land and everything—all the testimony that has been produced before you to enlighten you on the subject—and put to yourselves the question: 'Did the railroad company exercise ordinary care?' If it did, it must go Scott free; if it didn't, it must pay for the piano. Whether it did or not is a question for the jury."

The charge was in accord with the settled law of this State as declared in *Wardlaw* v. *R. R. Co.,* 11 Rich., 340; *Brunson & Boatwright* v. *R. R. Co., ante* 9; and the still more recent case of *Fleischman, Morris & Co.* v. *Southern Railway Co., ante* 237, which states the rule in this language: "The bailor must prove delivery to the bailee and his refusal to return as required by the contract of bailment. The burden is then on the bailee to prove that he has not converted the property, and this he may do by showing its loss and the manner of its loss; but by the manner of loss is meant not only the isolated fact of destruction by fire, or loss by theft or otherwise, but the circumstances connected with the origin of the fire, or other cause of loss or injury, as far as known to the bailee, and the precautions taken to prevent the loss or injury. From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee was negligent."

The judgment of the Circuit Court is affirmed.