# CHARLESTON.

KEYSER CANNING COMPANY *v.* KLOTS THROWING COMPANY.

(No. 5231.)

Submitted March 4, 1925.    Decided March 17, 1925.

1. TRIAL—*If There Is Substantial Evidence of One of Several Theories, Court Cannot Instruct, Unless Facts Warrant Recovery on Some Other Theory, to Find for Defendant.*

   Where there is substantial evidence on one of several theories on which recovery is sought, the trial court may not properly instruct the jury that unless they find from the evidence facts warranting a recovery on one or more of the other theories pleaded and relied on, they should find for the defendant. (p. 490).

2. APPEAL AND ERROR—*Decision on Particular Point in Former Hearing Is Law of Case on Second Appeal.*

   The decision of this court on a particular point on a former hearing will be regarded as the law of the case on a second appeal, unless new pleadings and new evidence adduced on the subsequent trial call for a different judgment. (p. 490).

3. EVIDENCE—*Expert Witnesses as Rule Should Not be Allowed to Give Opinion as to Origin of Fire Except on Hypothetical Questions Covering All Facts Which Evidence Tends to Establish.*

   Where the question before the court and jury is as to the origin of the fire causing the damages sued for, expert witnesses should not as a rule be allowed to give their opinions thereon except upon hypothetical questions covering all the facts which the evidence tends in an appreciable degree to establish. (p. 495.)

4.  SAME—*Statement in Proof of Loss as to Cause of Fire Not Admissible as Positive Admission Against Interest That Fire Was So Caused.*

    An answer by a superintendent of a manufacturing company in proofs of loss, as to the origin or cause of the fire, "unknown, presumably due to steam lines in dry room," should not be admitted as a positive admission against interest, that the fire causing the damages sued for was in fact so caused. (p. 495).

5.  SAME—*Defendant Putting Witness on Stand Bound on Subsequent Trial by Witness' Answer; Testimony of Defendant's Interest May Be Introduced by Plaintiff.*

    But where the defendant on the trial of a case puts a witness on the stand to prove a material fact in issue, he is bound on a subsequent trial of the same case by the answer of the witness, and such admission may be introduced in evidence by the plaintiff on a subsequent trial as proof of the fact so admitted. (p. 496).

6.  ASSIGNMENTS—*Suit for Damages Arising Out of Tort Should be in Name of Assignor for Use of Assignee.*

    An assignee of a claim for damages arising out of tort, as distinguished from one arising out of contract, can not maintain an action against the tort feasor in his own name or as assignee. The suit should in such cases be in the name of the assignor, for the use of the assignee. Reaffirming the same proposition enunciated in *Barkers Creek Coal Co.* v. *Alpha-Pocahontas Coal Co.*, 96 W. Va. 700, 123 S. E. 803. (p. 497.)

7.  NEGLIGENCE—*Degree of Care Required to Guard Against Injury by Fire.*

    If an accidental fire originates on one's premises and does damage to his neighbor, he is not liable therefor unless he has failed to use ordinary care and skill to extinguish it, or to provide adequate means of doing so, the degree of care required depending on the facts and circumstances; the greater the danger, the greater will be the degree of care required to guard against it. (p. 498.)

Error to Circuit Court, Mineral County.

Action by the Keyser Canning Company against the Klots Throwing Company. Judgment for defendant, and plaintiff brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Harry G. Fisher,* for plaintiff in error.

*Charles N. Finnell and H. P. Whitworth,* for defendant in error.

MILLER, JUDGE:

This case was here on a former writ of error, prosecuted by plaintiff, when the adverse judgment against it was reversed and the case remanded for a new trial. 94 W. Va. 346.

After the case went back, and before the new trial, plaintiff was permitted to file a fourth amended declaration, making all prior declarations parts thereof, and on which defendant joined issue. This new declaration contains but two counts, but in substance it embodies the same averments of facts, with slightly changed relation, and in addition charges certain specific omissions of alleged duty which defendant owed plaintiff, in order to provide against the dangers of fire resulting in the destruction of plaintiff's property and the property of its assignor, Charles W. Siever, their common landlord, viz: (1) failure to install and keep in position a thermometer showing the degree of heat in the dry kiln; (2) failure to maintain a sprinkler system in the dry kiln, properly constructed and connected with the town water system and water tank on the building; (3) failure to have a hose connection with the water system on the premises; (4) failure to provide adequate fire extinguishers, buckets, barrels, with which the fire might have been put out by its servants or others; and (5) failure to equip the steam pipes leading into the pipes under the dry kiln with a valve or mechanism by which the amount of steam going into the radiator, and the temperature, could be controlled and the fire prevented.

The issues presented by the pleadings, as well as by the evidence adduced on the last trial were substantially the same as those presented by the record before us on the former hearing, with the exception that on the last trial, defendant introduced certain expert evidence on spontaneous combustion, one of the theories pleaded and relied on as a

basis of recovery, which it is contended was sufficient to carry the case to the jury on the conflicting evidence thereon, and that the verdict of the jury being supported by the defendant's evidence, it is conclusive of plaintiff's rights based on that theory.

As on the former hearing, so on this, plaintiff relied on four theories, namely: First, that the fire was due to the application of direct heat, by means of overheated steam pipes in defendant's dry kiln, allowed to become and remain out of repair, as distinguished from the theory of spontaneous combustion generated under the conditions existing in the kiln; Second, the theory of spontaneous combustion alluded to in the first proposition, and on which plaintiff mainly relied in previous trials, and emphasized in the opinion on the former hearing here; Third, that defendant negligently permitted strangers and employees to enter its premises and sleep therein, knowing them to be dangerous in their habits of smoking and throwing matches and lighted cigar and cigarette stubs on the floor; and, Fourth, that defendant negligently omitted to provide proper preventative fire extinguishers, as set forth in its fourth amended declaration.

We shall not, in disposing of the case on this hearing, undertake to answer all the propositions of counsel. Many of them are extremely technical, and their decision either immaterial or unnecessary to the proper determination of the present writ. Of course we would not presume to reflect on the commendable energy displayed by able counsel in endeavoring to do their duty to clients, and to aid the court. It suffices to say that the law laid down in our former opinion must be regarded as the law of this case, except in so far only as the facts not therein before us may have changed the relative rights of the parties.

On the first proposition, that the fire was the result of direct excessive heat applied to the defective and dangerous dry kiln by the steam pipes or coils, defendant's counsel say that recovery can not be predicated on that theory; because no evidence was adduced to justify it; and by their instruction number six, complained of by plaintiff, they had the court tell the jury that under the pleadings and

evidence they could not find defendant guilty unless they "believed from a preponderance of the evidence that the fire which destroyed the plaintiff's property was caused by the witness, Thorpe, smoking cigarettes in the defendant's office, or was caused by spontaneous combustion either in the dry box of the defendant or in the coil box immediately beneath it, and not then unless they further believed from the evidence in the case that the conditions which caused such spontaneous combustion to take place were known to the defendant or by reasonable care and inspection could have been known, and that they were such as to lead a reasonably prudent man operating said dry box in the manner and form as the same was operated by the defendant to believe that spontaneous combustion would likely take place therein." And by its instruction Number 13, the defendant had the court tell the jury that there was no evidence in the case that the fire which destroyed plaintiff's property was caused by excessive heat directly igniting the dry box, its contents, or the coil box located on defendant's premises as alleged in plaintiff's declaration.

In our opinion, instruction number six, so limiting plaintiff's right of recovery, and number thirteen, telling the jury there was no evidence in the case justifying recovery on plaintiff's theory that excessive heat applied directly to the dangerous kiln caused the fire, were erroneous. There was the evidence of the witness Thorpe, present in the room where the kiln was located, who swore that the fire originated in the kiln, and other witnesses on the outside who saw the fire when it first broke out, located it in the corner of the room where the dry kiln was. Besides this evidence and the physical facts existing at the time and after the fire, pertaining to the pipes, the coil and the condition of the valve, tended strongly to support the theory that the fire originated in the dry kiln; and if the evidence of defendant's expert witnesses against the theory of spontaneous combustion is to have any weight, and the fire in the kiln was not the result of spontaneous combustion, it was there and must have come from overheated pipes and direct heat applied to the inflammable parts of the kiln.

Besides this evidence plaintiff relies on the proofs of loss filed by defendant with the insurance company after the fire. They were verified by defendant's district superintendent, Bernard J. Shelton, who in answer to question No. 14, as to the origin of the fire, answered: "Unknown, presumably due to steam lines in drying room." Defendant's counsel objected to the introduction of this document, but the court admitted the page bearing the signature of Mr. Shelton; and showing the answer to the question referred to. Whether this was legal evidence against the defendant on this issue, as an admission, and as to its effect, will be considered in another connection. The plaintiff also relies on the proposition that at the common law the tenant was bound to re-deliver to the lessor the leased premises unimpaired, except for ordinary wear, tear and usage, and that as to the claim of the landlord assigned to plaintiff the origin of the fire is immaterial. This proposition will be disposed of in another connection.

Suffice it to say that we think there was evidence to carry the question to the jury on the theory that the fire originated in the dry kiln from the application of direct heat, and that the court erred in its rulings on both the sixth and thirteenth instructions given for the defendant.

On the theory of spontaneous combustion as the origin and cause of the fire, we decided on the former hearing that the verdict of the jury was clearly against the direct weight and preponderance of the evidence and that a peremptory instruction to find for the plaintiff should have been given, and on this as one of the grounds therefor we reversed the former judgment; and defendant's counsel concede that the former decision is conclusive of this proposition unless, as they now claim is the fact, the new evidence of expert witnesses, introduced on behalf of defendant and tending to contradict the evidence adduced on behalf of plaintiff, is sufficient to carry the question of fact to the jury, and if so, the verdict is conclusive of this question.

The evidence of the plaintiff on this question, expert and otherwise, is substantially the same as that adduced on the former trial, and we need not repeat what we said of it in

support of our opinion on the former hearing, that there should have been an instruction to find for the plaintiff; and unless the evidence of the experts produced by defendant on the last trial is sufficient to support the verdict, we are bound to come to the same conclusion. The two witnesses, Messrs. Jackson and Reid, the former a chemical engineer in the school of mines at Columbia University, New York, the latter a professor of organic chemistry at Johns Hopkins University, Baltimore, Maryland, were men of experience and qualified to speak on the subject, both from a theoretical and practical standpoint. When the hypothetical question propounded by plaintiff's counsel, covering all the facts and circumstances of the fire, was either read to them, or they admitted they had read it, they were each asked what in their opinion was the cause of the fire, and neither had any opinion on the subject; but influenced, either by their observation of other kilns at other plants of the defendant company, or by experiments with wood taken from one or more of the other plants, or with woods gotten elsewhere, they gave it as their opinion that the fire in defendant's plant could not have been the result of direct heat or spontaneous combustion. None of the experiments conducted by them, indeed none of the kilns used in the other plants of the defendant, were exactly like the one in question here. There were material differences in construction. For example, in one or more of them boxing surrounding the steam coils was constructed of metal, in place of wood, and there were a number of other differences noted in the evidence; and the experiments testified to were not made under exactly or substantially the same circumstances and conditions. The value of their testimony was therefore very much impaired. For this reason the trial court would not allow the witnesses to conduct experiments in the presence of the jury. No point is made against this ruling by defendant's counsel. Both witnesses were of opinion also that the fire could not have been the result of the direct heat applied to the kiln by the steam pipes. The fact remains, however, by the overwhelming weight of the evidence, that the fire did originate in the dry kiln. All the witnesses, except the defendant's night

watchman Cain, agree on this fact; and on the last trial defendant did not undertake to locate the origin of the fire elsewhere in its mill.

Apropos to the question whether the fire in the dry kiln could have resulted from spontaneous combustion, we quote from 73 Literary Digest, June 10, 1922, number, p, 23, article by Walter L. Wedger, chemist of the Massachusetts Department of Public Safety, taken from the National Safety News, Chicago, as follows:

> "Recently the Brockton fire department was called to extinguish a fire which originated in a building at a point in a partition where the hot steam-pipe was in contact with a piece of wood. The firemen made short work of the fire and chopped away to find the cause. The wood at the point of contact with the hot pipe was deeply charred. Fire had started in this charring and spread upward. The ignition temperature of a piece of soft wood ranges around 450 degrees Fahrenheit. The question then arose: 'How could steam at the temperature of boiling water, 212 degrees Fahrenheit or higher, if under pressure, ignite wood which would not take fire until 450 degrees had been reached'? The gradual charring of the wood in the interior of dry rooms heated by steam is very noticeable. This thin layer of carbon becomes oxidized from exposure to air, but if the steam-pipe is under high pressure and is in contact with wood inside of a partition where there is no circulation of air, pyrophoric carbon may be formed which is claimed to ignite spontaneously at about 300 degrees Fahrenheit—the temperature of steam under a pressure of seventy pounds. This may account for the Brockton fire."

Observe that he says pyrophoric carbon in thin layers formed under circumstances similar to those existing in defendant's dry kiln is liable to ignite at 300 degrees Fahrenheit, exactly the temperature probably generated in defendant's dry kiln, according to defendant's expert witnesses, based on the steam pressure in the boilers then in use.

If the fire originated in the kiln, it must in all reason have come from the one or the other of the causes repudiated

by defendant's expert witnesses.  If so, we remain of the opinion that plaintiff was entitled to an instruction to find for it on that issue such damages as the jury should find from all the evidence the plaintiff had sustained by the alleged negligence of the defendant; but we do not wish to be understood as approving plaintiff's instruction number one, rejected by the trial court, in substance or in form.  If on another trial counsel for plaintiff should request a peremptory instruction, care should be taken that it states the law correctly and is pertinent to the facts.  As to whether there should be included the damages of Charles W. Siever, claimed by defendant as assignee, is a question which we will dispose of later.  That defendant's dry kiln was a very dangerous menace to plaintiff and others, there can be no doubt. Defendant had been warned thereof by inspectors from the insurance companies, and heeded them not.  As a result, plaintiff's insurance was cancelled, and lost.  The slightest prudence on defendant's part called for prompt correction of the defective and dangerous agency.  It assumed the risks and ought to answer for the disastrous consequences to others.

As the expert witnesses had no opinion as to the cause of the fire based on the facts covered by the hypothetical question, we think it extremely doubtful whether they should have been permitted to give any opinion, assuming their testimony created a conflict in the evidence, except upon a question hypothetically propounded covering all the facts in evidence. *State* v. *Musgrave,* 43 W. Va. 672; *Bowen* v. *Huntington,* 35 W. Va. 682; *Kerr* v. *Lunsford,* 31 W. Va. 659. We think the practice indicated by these authorities should be followed.

But while plaintiff's reliance is on the theory that the fire originated, as alleged, in the dry room, it is also contended that recovery would be justified on the fact pleaded, that the fire was the result of the negligence of the defendant in allowing Thorpe, a negligent employee, to sleep in the office of the company, and that the fire originated in a waste basket from his negligently throwing cigar and cigarette stumps and ashes therein, as testified to on the former

trial by defendant's witness Cain.  We commented on this evidence, on this phase of the case, in our former opinion. But it is now argued that there is no evidence in the present record upon which plaintiff can predicate recovery on that theory, and that it is inconsistent with plaintiff's theory that the fire originated in the dry kiln.  Defendant did not offer in defense, as on the former trial, the evidence of Cain, but under a stipulation between counsel it was read out of the record of the former trial, not as binding as original evidence on behalf of the plaintiff, but, as its proofs of loss filed with the insurance company, as a fatal admission against its interest and binding defendant as such on this trial.  The so-called admission in the proofs of loss by Shelton, defendant's superintendent, made in answer to the question as to the origin of the fire was: "Unknown, presumably due to steam lines in dry room."  This admission, made soon after the fire, is rather significant also on the question as to where the fire originated, but we think the answer was a mere opinion, and did not amount to an admission of the fact of negligence on the part of defendant.  It was not intended as a statement of the fact, nor offered as such; quite the contrary.

But as to the evidence of Cain, offered on the former trial, the case stands very differently.  Cain's evidence was offered by defendant to prove that the fire did not originate in the dry kiln, but in the waste basket in which Thorpe had cast his cigar and cigarette ashes and stubs.  The trial court ruled that this testimony could not be introduced by plaintiff on the trial as an admission on the part of defendant.  Of course, a party is not bound by everything his witness may say on the stand, as an admission on his part, particularly where he does not know beforehand what the witness is going to say; but if he puts a witness on the stand, as defendant did in this case, to prove a particular fact in issue, he is bound thereby as an admission on a subsequent trial.  2 Wigmore on Evidence, (2nd ed.), §1075, p. 578; *Clark* v. *Clark,* 70 W. Va. 433; *Roberts* v. *Crouse,* 89 W. Va. 15; 22 C. J. 341-342; 16 Cyc. 975.  So that, if we should eliminate all evidence on the main proposition, that the fire originated in the dry

kiln, would not the defendant be committed to the admission of an act of negligence, binding it for consequential damages sustained by plaintiff? We think we must answer in the affirmative, particularly in view of our holding on this question on the former hearing, which must be regarded as the law of the case.

Another question which should be disposed of for the purpose of another trial, and one which apparently was not relied on or considered on the former hearing, is the right of plaintiff to sue in its own name or as assignee of the damages alleged to have been sustained by the landlord, Charles W. Siever. It is strenuously contended by counsel for defendant that no such right exists, either at common law or under our statute. Since this case was here on the former appeal we have decided this exact question, approving the proposition of defendant's counsel. *Barkers Creek Coal Co.* v. *Alpha-Pocahontas Coal Co.*, 96 W. Va. 700, 123 S. E. 803. That case was certified to us, and one of the questions was whether plaintiff as assignee of a coal lease and all rights and rights of action accruing or which had accrued to the assignor under the lease, could maintain in its own name, or as assignee, an action for a tort committed by defendant prior to the assignment; and we decided that such action could be maintained only in the name of the assignor for plaintiff's use and benefit. We think this decision clearly right for the reasons so clearly and fully stated in the opinion of Judge MEREDITH, and which we will not undertake to repeat on this occasion.

By pleadings and proof the plaintiff based its right of recovery also on the alleged negligence of defendant in failing to equip its plant with adequate fire protection, such as hose connections with the water systems, and with buckets, barrels of water, or a sprinkler system. The general rule seems to be that when an accidental fire starts on one's premises, he is not liable for the damages thereby caused to his neighbor, unless it started through his negligence, or he failed to use ordinary care and skill to extinguish it, or failed to provide adequate means for so doing. *Mahaffey* v. *Lumber Co.*, 61 W. Va. 571, 575. The degree of care re-

quired, of course, depends on the character of the building and the use to which it is being put. The greater the risk and danger incident to the operations being carried on there, the greater the degree of care required to guard against the injury that is likely to be done to another's property. *World's Columbian Exposition* v. *Republic of France,* 91 Fed. 64, 33 C. C. A. 333; *Oceanic Steam Navigation Co.* v. *Aitken,* 196 U. S. 589, 49 Law Ed. 610, 613; *Duer* v. *Allen,* (Iowa), 64 N. W. 682; *McCord* v. *Atlantic Coast Line Railroad,* (S. C.), 57 S. E. 477; *Hauch* v. *Hernandez,* 41 La. Ann. 992, 6 So. 782; *Orander* v. *Stafford,* 98 W. Va. 499.

The degree of care that should be observed is such as a reasonable man ought to observe about his own business, not what some one individual would regard adequate. In this case the defendant had practically no provisions for extinguishing fires. It was insured against loss, and it rested content so long as its insurance remained in force. Apparently it had but one small fire extinguisher in the room where the fire was located, and Thorpe was able to find in the building but two others, and by exhausting them was unable to extinguish the fire in the kiln. In other words, defendant had made practically no provisions for extinguishing fires. Generally, however, as the authorities cited hold, the question of negligence in such cases is one of fact for the jury.

In view of the disposition we have made of the questions already covered, we deem it unnecessary to consider the many questions argued respecting the admission of evidence, and instructionss to the jury, given and refused. What has been said here and in our former opinion in this case, we think ought to be sufficient to guide the parties and the court below in the proper disposition of the case.

We therefore reverse the judgment, set aside the verdict, and award the plaintiff a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*