R. E. MAZE *et al.* v. HUNTER M. BENNETT *et al.*

(No. 8249)

Submitted February 11, 1936. Decided March 3, 1936.

*A. G. Mathews,* for appellants.
*James L. Smith* and *Lorentz C. Hamilton,* for appellees.

HATCHER, PRESIDENT:

This is a suit to remove as a cloud upon the several titles of the plaintiffs to a tract of some 500 acres of land, a partially executed compromise in writing made in 1896, between their predecessors in title, and those of defendants. From a decree in favor of plaintiffs, the defendants appealed.

Upon a prior appeal here in this cause, the bill was sustained. See *Maze* v. *Bennett,* 114 W. Va. 169, 171 S. E. 249. We quote therefrom as follows:

"In 1896, the Bennetts and the Mazes were in litigation over the tract and they concluded a written compromise, stipulating (1) that the litigation should terminate, (2) that the Mazes should pay to the Bennetts $50.00 and 'convey' unto them '1/16 of the oil and gas that may be produced and carried off said land,' and (3) that the Bennetts should release and quit claim (by deed) to the Mazes all of their right, title and interest in the tract except the 1/16 of the oil and gas as aforesaid. The bill, filed at March Rules, 1932, alleged that all of the parties to the compromise agreement were dead; that the Mazes who signed the same were the joint owners of the 500-acre tract; that they partitioned the same among themselves in 1897; that certain of the plaintiffs claim by inheritance from the Maze signatories of the compromise, and the other plaintiffs claim by purchase under the Maze title; that in 1928 and again in the early part of 1931, oil and gas in paying quantities were produced on the tract and now the Bennett heirs are claiming a 1/16 interest in the oil and gas; that plaintiffs never knew of

the compromise agreement of 1896 or the claim of defendants thereunder until about May or June of 1931; that the agreement was not recorded until June 11, 1931; and that while (on information) the $50.00 mentioned in the agreement was paid, the deeds mentioned were never executed. * * * In addiiton to the lapse of thirty-six years, the bill alleges (a) the death of the original parties to the agreement; (b) the failure of both parties to execute the conveyances referred to in the agreement; and in effect (c) that the Bennetts 'stood by' without presenting their claim, while the Mazes dealt with the land as though exclusively their own. As no time was mentioned in the agreement for the exchange of the deeds, the law implied that the exchange would be made within a reasonable time. *Andrews* v. *Bell*, 56 Pa. 343. Whatever time may have been reasonable, it expired more than a generation ago. We are, therefore, of opinion that the lapse of time in connection with the allegations (1) of material changes in circumstances which would make performance now onerous to the Mazes, and (2) of indifference of the Bennetts to their right and their obligation under the contract 'indicate a virtual abandonment of the contract,' and (unexplained) constitute such laches as sustains the bill for the plaintiff Maze heirs."

After the cause was remanded, proof was taken. The material facts alleged in the bill were proved without controversy. It was also shown that plaintiffs and their predecessors in title had been in continuous and uninterrupted possession of the 500 acres since 1896. Only one of the defendants, Hunter M. Bennett, testified. He was a son of W. G. Bennett, who died in 1916, and a nephew of Louis Bennett, who died in 1918, both of whom were parties to the Maze-Bennett compromise agreement. Hunter was the administrator of his father, an executor of Louis Bennett and had general charge of the Bennett estates. Hunter knew nothing of the compromise agreement until 1918, when he noticed some ledger entries made by his uncle Louis of moneys paid to and received from the Mazes in 1897 and 1898, under the compromise. Hunter at once employed an agent to watch for oil and

gas development on the Maze lands; but he made no demand of and asserted no claim against the plaintiffs until·after gas was produced in 1929. He then instituted inquiry for the original agreement, which was finally found in 1931, among the papers of an attorney, now deceased, who at one time had represented· the predecessors of the plaintiffs.

Counsel for defendant contends that the changed circumstances herein since 1896 are not material. That contention is foreclosed by our former decision, wherein we held that the changes alleged in the bill and which have since been proven, *were material.* That decision became the law of the case. "The decision of this court on a particular point on a former hearing will be regarded as the law of the case on a second appeal, unless new pleadings and new evidence adduced on the subsequent trial call for a different judgment." *Keyser Canning Co.* v. *Klots Throwing Co.,* 98 W. Va. 487, 128 S. E. 280. Accord: *Kaufman* v. *Catzen,* 100 W. Va. 79, 130 S. E. 292; *Leitch* v. *Ry. Co.,* 101 W. Va. 230, 133 S. E. 140; *Hager* v. *Coal Co.,* 112 W. Va. 479, 164 S. E. 666.

The sole excuse advanced by counsel for the failure of the Bennetts to assert their claim between 1898 and 1929 (a period of thirty-one years) is one of law, not fact. Counsel says the Bennetts were not entitled under the compromise to an interest in the land itself, but only to "an interest in the proceeds of oil and gas produced"; and that all they could do "was to sit by and wait for oil and gas development." The covenant of the Mazes, in relation to the oil and gas, provided that they should *"convey* unto the parties of the first part (the Bennetts) one sixteenth of the oil and gas that may be produced and carried off said land, whether under the existing leases executed by the parties of the second part or otherwise, but reserving the right *in such conveyance"* to use oil and gas for domestic purposes. The language of the covenant shows clearly that despite reference to the oil and gas which might be "produced and carried off" the land, a *conveyance* of the one sixteenth interest to the Bennetts was intended; a conveyance which would com-

prise that interest once and for all, whether oil and gas were produced *under "existing leases or otherwise."* Our former opinion construed the agreement as requiring an "exchange of the deeds" between the Mazes and the Bennetts. That construction is also the law of the case.

The decree is affirmed.

*Affirmed.*