591 S.E.2d 728

**STATE of West Virginia ex rel. Frazier & Oxley, L.C., a West Virginia Legal Corporation, and William M. Frazier, Individually, Petitioners,**

v.

**The Honorable John L. CUMMINGS, Judge of the Circuit Court of Cabell County, West Virginia and St. James Management Company, L.L.C., a West Virginia Limited Liability Company, Respondents.**

No. 31391.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2003.

Decided Oct. 15, 2003.

Dissenting Opinion of Justice Albright Dec. 8, 2003.

Dissenting Opinion of Justice McGraw Dec. 10, 2003.

Concurring Opinion of Justice Maynard Jan. 6, 2004.

Maynard, J., concurred and filed opinion.

McGraw, J., dissented and filed opinion.

Albright, J., dissented and filed opinion.

Thomas E. Scarr, Michael A. Frye, Michael E. Estep, Jenkins Fenstermaker, P.L.L.C., Huntington, for Petitioners.

Daniel T. Yon, Todd A. Biddle, Bailes, Craig & Yon, Huntington, for Respondent.

Ancil G. Ramey, Michelle E. Pizak, Steptoe & Johnson, P.L.L.C., Charleston, for City National Bank.

DAVIS, Justice.

Frazier & Oxley, L.C. and William M. Frazier (hereinafter "Frazier and Oxley") seek an original jurisdiction writ to prohibit Respondent Judge, the Honorable John L. Cummings of the Circuit Court of Cabell County, from enforcing his order of April 1, 2003, granting the Respondent, St. James Management Company (hereinafter "St. James") leave to file an amended complaint against Frazier & Oxley and City National Bank Corp. (hereinafter "City National"). Having reviewed the petition for prohibition and the supporting memorandum of law, the responses, and all the accompanying exhibits, we herein grant the writ.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This original jurisdiction proceeding grows out of real estate litigation concerning space Frazier & Oxley occupies in the St. James Building in Huntington. This is the second original jurisdiction proceeding to come before us due to the St. James litigation. In *State ex rel. Frazier & Oxley v. Cummings,* 212 W.Va. 275, 569 S.E.2d 796 (2002) ("*Frazier & Oxley I* "), we granted Frazier & Oxley a writ of prohibition against the circuit court prohibiting it from enforcing a partial summary judgment granted to St. James. We need not repeat the detailed factual history found in *Frazier & Oxley I.* We will simply review the important aspects of the underlying dispute and then detail the facts that arose after *Frazier & Oxley I* pertinent to this prohibition proceeding.

In 1980 St. James's predecessor in interest, First Huntington Building Corporation, entered into a lease agreement (hereinafter "the prime lease") with the predecessor in interest to City National, Old National Bank of Huntington.[1] In 1987, Frazier and Oxley subleased the St. James Building's mezzanine. After City National took over the St. James Building, a dispute arose between St. James and Frazier & Oxley concerning, among other things, the sublease. The two parties reached a settlement signed on November 9, 1999. Under the pertinent settlement terms, the term of sublease was "concurrent with the term of the master/primary lease .... and shall expire ... upon the expiration or termination of the master/primary lease .... "

In the fall of 2000, City National approached St. James seeking to end the prime lease. On September 27, 2000, City National and St. James entered into a lease termination agreement. Under this termination agreement, City National surrendered to St. James the main banking facility located in the St. James Building. In July 2001, Frazier & Oxley was informed that the sublease terminated as a result of the termination of the prime lease. Frazier & Oxley, however, remained on the premises. By letter of October 26, 2001, St. James provided official notice to Frazier & Oxley to vacate. After Frazier & Oxley refused to vacate, St. James sued seeking immediate possession of the mezzanine and damages. Frazier & Oxley subsequently filed a third-party complaint against City National.

The circuit court then granted St. James and City National a partial summary judgment by ordering Frazier and Oxley to vacate the premises. Frazier & Oxley sought a prohibition which we granted, holding that the rights of a subtenant depend on whether the primary lease was "terminated," which would also terminate the sublease, or was "surrendered," which would not affect the sublease. *Frazier & Oxley I*, 212 W.Va. at 281, 569 S.E.2d at 802. At that point in *Frazier & Oxley I*, we observed

> [t]his would be the end of our inquiry were it not for the settlement agreement which was executed between City National and Frazier & Oxley. Absent that agreement, we would simply reverse the circuit court's award of summary judgment in favor of City National and St. James and remand for a factual determination of whether a surrender of the prime lease occurred.

*Id.*, at 281, 569 S.E.2d at 802 (footnote omitted). We then recognized that if a subtenant consents to the surrender, the consented to surrender would terminate the sublease, *id.* at 281–82, 569 S.E.2d at 802–03, but found that the settlement agreement between Frazier & Oxley and City National could not be construed as Frazier and Oxley's consent to a surrender. *Id.* at 283, 569 S.E.2d at 804. Thus, we granted the writ of prohibition. *Id.*, at 284, 569 S.E.2d at 805. Having detailed the history of this case to the issuance of our opinion in *Frazier & Oxley I*, we now discuss the pertinent facts as they have arisen since *Frazier & Oxley I*.

After this Court granted the requested writ, the parties returned to the circuit court and conducted at least some additional discovery. Part of the discovery included the partial deposition of William Frazier which was conducted on November 26, 2002. It also appears that at some point Frazier & Oxley and City National settled their suit. According to City National, "Frazier & Oxley has agreed to litigate th[e] matter without making third-party claims against City National."

On or about February 3, 2003, St. James filed a motion to amend their complaint under Rule 15(a) of the West Virginia Rules of Civil Procedure to add a claim that the Frazier & Oxley sublease was void against it as it was not recorded.[2] St. James's motion also

---

1. Since 1980, ownership of the St. James Building transferred several times, each subject to the prime lease. Ownership passed from the First Huntington Building Corporation to St. James Limited Partnership to the West Virginia Investment Management Board to, finally, St. James

on April 29, 1999. *Frazier & Oxley I*, 212 W.Va. at 277 n. 1, 569 S.E.2d at 798 n. 1.

2. Technically, this motion was to file a *second* amended complaint as St. James had previously filed an amended complaint without leave of court, as is permitted for amendments filed be-

sought to add City National as a first-party defendant asserting that City National breached its duty to disclose the sublease and that it breached its contract with St. James. Frazier & Oxley objected to the motion arguing that: 1) amendment of the complaint is futile since St. James was on notice of Frazier & Oxley's possession of the mezzanine; 2) St. James failed to show "very compelling circumstances" required to justify amendment following our adverse ruling on St. James's original theory; 3) St. James factually and judicially admitted the validity of the sublease and was estopped from denying its validity; and, 4) the law of the case doctrine barred St. James's amended complaint. By order of April 1, 2003, the circuit court allowed the amendment.[3] It is from this order that Frazier & Oxley and City National seek extraordinary relief.[4]

## II.

### GROUNDS FOR ISSUING THE WRIT

A writ of prohibition lies "as a matter of right in all cases of usurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W. Va.Code § 53-1-1 (2000 Repl.Vol.). Frazier & Oxley and City National do not dispute that the circuit court had jurisdiction. They argue that the circuit court exceeded its legitimate powers in allowing St. James to amend its complaint. The governing standard in such a case is set forth in syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an often repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With due regard for this standard, we proceed to discuss the substantive issues raised in connection with this request for a writ of prohibition.

## III.

### DISCUSSION

Both Frazier & Oxley and City National Bank raise a number of grounds supporting their claims that the circuit court abused its discretion in making a clear error of law in allowing St. James to amend its complaint. We find it unnecessary to analyze all the grounds presented. Rather, we issue the writ on behalf of Frazier & Oxley because the circuit court ignored the mandate of this Court in *Frazier & Oxley I* by allowing St. James to amend its complaint in direct contravention of our limited remand in *Frazier & Oxley I*.

Frazier & Oxley assert that the circuit court committed clear legal error in permitting St. James to amend its complaint be-

fore a responsive pleading is served. St. James states that this initial amendment merely "corrected the identification of a party."

**3.** Apparently a hearing was held on the motion to amend on February 21, 2003. A copy of the transcript was not included in the exhibits before us.

**4.** As we previously noted, City National settled with Frazier & Oxley. However, as a result of the circuit court granting St. James leave to amend, City National once again became a party to this litigation.

cause such amendment would violate the law of the case doctrine. We agree with Frazier & Oxley and take the opportunity this case presents us to address the law of the case doctrine.

■ The law of the case doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal." 5 Am.Jur.2d *Appellate Review* § 605 at 300 (1995) (footnotes omitted). "[T]he doctrine is a salutary rule of policy and practice, grounded in important considerations related to stability in the decision making process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.1991). Thus, consistent with these considerations, we have previously held, "[t]he general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W.Va. 469, 115 S.E.2d 320 (1960).[5]

■ Of course, here we deal with a case that we remanded. In such circumstances, a special aspect of the law of the case doctrine is implicated-the mandate rule.[6] We have explained that under the mandate rule

> [a] circuit court has no power, in a cause decided by the Appellate Court, to re-hear it as to any matter so decided, and, though it must interpret the decree or mandate of the Appellate Court, in entering orders and decrees to carry it into effect, any decree it may enter that is inconsistent with the mandate is erroneous and will be reversed.

Syl. Pt. 1, *Johnson v. Gould*, 62 W.Va. 599, 59 S.E. 611 (1907).[7] *See also United States v. Vigneau*, 337 F.3d 62, 67 (1st Cir.2003) ("One aspect of the law of the case doctrine is the 'mandate' rule, which requires a district court to follow the decisions of a higher court."). Because the recording act claim clearly was not presented in *Frazier & Oxley I*, it could not have been explicitly decided by this Court. Further, nothing in *Frazier & Oxley I* indicates that we implicitly decided the validity of the sublease under the recording act.[8]

5. The law of the case doctrine is implicitly recognized by article 8, section 4, clause 3 of the West Virginia Constitution which provides:

> When a judgment or order of another court is reversed, modified or affirmed by the court, every point fairly arising upon the record shall be considered and decided; the reasons therefor shall be concisely stated in writing and preserved with the record; and it shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case.

> One of the purposes of this provision is to provide guidance when a case is remanded "so that when the case comes back to the circuit court the judge may there have the judgment of the supreme court on all points of law that arise in the case and know what he is doing and save the party the second trial." II *Debates and Proceedings of the First Constitutional Convention of West Virginia* 869 (Charles H. Ambler, et al., eds, n.d.) (statement of Delegate Brown on predecessor provision to article 8, section 4, clause 3).

6. "The mandate of an appellate court ... is its order formally advising the lower court of its

decision[,]" Robert L. Stern, *Appellate Practice in the United States* § 16.8 at 466 (2d ed.1989), which marks the end of appellate jurisdiction and the return of the case to the lower tribunal for such proceedings as may be appropriate. *Laclede Steel Co. v. United States*, 125 F.Supp.2d 525, 527 (CIT 2000). West Virginia Rule of Appellate Procedure 25 provides for the issuance of mandates in cases pending before us. See infra note 9 for a further discussion of Rule 25.

7. We are aware, of course, that our decision in *Frazier & Oxley I* was the result of an original jurisdiction proceeding and not an appeal. However, Rule 25 of the West Virginia Rules of Appellate Procedure makes no distinction between a mandate issued in an appeal or one issued in an original jurisdiction proceeding. Thus, the effect of our mandate on a lower court is the same whether rendered in an appeal or as the result of an original jurisdiction proceeding. Therefore, for purposes of the mandate rule, we consider the distinctions between appeals and original jurisdiction proceedings to be inconsequential.

8. We hasten to add that the implied conclusion must be "necessary to a decision in the case" or

■ However, this does not end our inquiry. The mandate rule is not limited to matters we decide either explicitly or implicitly on appeal. Rather, when this Court's decision of a matter results in the case being remanded to the circuit court for additional proceedings, our mandate controls the framework that the circuit court must use in effecting the remand. To demonstrate how this rule should be applied, we first review the concepts related to remands.

■ Appellate remands are characterized as general or limited. A general remand broadly remands the case and "when a cause is broadly remanded for a new trial all of the issues are opened anew as if there had been no trial, and the parties have a right to amend their pleadings as necessary." *Overton Constr. Co. v. First State Bank*, 285 Ark. 361, 362, 688 S.W.2d 268, 269 (1985). *See also* 5 Am.Jur.2d *Appellate Review* § 787 at 456 (1995) (footnote omitted) ("[W]here a case is generally remanded by an appellate court, the case stands as if it had never been tried, and thus the parties are free to amend their pleadings and assert new causes of action."). A limited remand, however, "prohibit[s] relitigation of some issues on remand, or direct[s] that only some expressly severed issues or causes may still be litigated." *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 366 (Tex.1985) (per curiam). Under a limited remand, "the court on remand is precluded from considering other issues, or new matters, affecting the cause." 5 Am.Jur.2d *Appellate Review* § 787 at 455 (1995) (footnotes omitted). In other words, " '[w]hen the further proceedings are specified in the mandate, the district court is limited to holding such as are directed. When the remand is general, however, the district court is free to decide anything not foreclosed by the mandate.' " *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 971 (10th Cir.1991) (quoting 1B *Moore's*

*Federal Practice* ¶ 0.404[10] (1988) (footnote omitted)). Simply put,

> [r]emands ... can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand.

*United States v. Campbell*, 168 F.3d 263, 265 (6th Cir.1999) (citations omitted). Consequently, we hold that when this Court remands a case to the circuit court, the remand can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate. General remands, in contrast, give circuit courts authority to address all matters as long as remaining consistent with the remand.

■ Although there is no universally applicable standard for determining whether a remand is general or limited, and the particular intricacies of each case will bear on the issue, there are certain relevant principles to be applied in making such a determination. *Id.* at 266. For example, a court must look to the entire mandate, examining every part of the opinion to determine if a remand is general or limited, as "[t]he relevant language could appear anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language." *Id.* at 266–67. We stress though "that individual paragraphs and sentences must not be read out of context." *Id.* at 267. Moreover, in the absence of explicit instructions, a remand order is presumptively general.[9] *Id.* at 268. In short,

it is dicta, which neither creates precedent, *In re Kanawha Valley Bank*, 144 W.Va. 346, 382–83, 109 S.E.2d 649, 669 (1959), nor establishes law of the case. *Laitram Corp.*, 115 F.3d at 951 ("Although the district court cites much authority for the proposition that issues decided implicitly by courts of appeals may not be reexamined by the district court, the rule is actually applicable only to those issues decided by *necessary* implication."); *Simmons v. Culpepper*, 937 S.W.2d 938, 942 (Tenn.Ct.App.1996) ("The law

of the case doctrine does not extend to mere dictum.")

9. We realize that, as a general matter, when we issue writs we do not typically impose limits on the trial courts outside of the context of the specific issue upon which the writ was granted. However, in *Frazier & Oxley I*, the parties presented the case to this Court in a way that required us to go beyond the narrow issue presented in prohibition to decide the case. Stated

[u]pon remand of a case for further proceedings after a decision by the appellate court, the trial court must "proceed in accordance with the mandate and the law of the case as established on appeal." The trial court must "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir.1991). (Citations omitted).

*United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994). *See also City of Cleveland v. Federal Power Comm'n*, 561 F.2d 344, 347 n. 25 (D.C.Cir.1977) (citations omitted) ("It has long been recognized that the court's opinion may be consulted to ascertain the intent of the mandate. That may now be all the more necessary since the mandate may—and at least in this circuit ordinarily does—consist of no more than the court's opinion and judgment. *See* Fed. R.App. P.41(a).") We find this authority also persuasive [10] and so hold that upon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. In other words, an opinion does not have to specifically contain the word "remand" in order to convey such a directive to the circuit court.

With these matters at rest, we must examine the instant proceedings to determine whether the circuit court exceeded our mandate in *Frazier & Oxley I* by allowing St.

James to amend its complaint to bring a new theory under the recording statutes. As an initial matter, though, we note that we have never before examined what standard of review applies to our determination of whether a circuit court's proceedings on remand violated this Court's mandate. Consequently, we pause briefly to explain our mode of review. Like the interpretation of other legal documents, such as constitutions, statutes and procedural rules,[11] we believe that the interpretation of one of our mandates, and the corresponding question of whether the circuit court complied with the mandate, are questions of law that should be reviewed *de novo*. Other courts examining this issue have reached similar conclusions. As the Court of Appeals for the Federal Circuit observed in adopting a *de novo* standard, "de novo review appears to be the standard of review that several Circuit Courts of Appeals have adopted." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950 (Fed.Cir.1997) (citing 2, 9, 10 and 11 circuit cases). *See also United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir.2003) (mandate interpretation is *de novo* ); *Pennington v. Doherty*, 110 F.3d 502, 506 (7th Cir.) (similar), *vacated on other grounds*, 522 U.S. 909, 118 S.Ct. 292, 139 L.Ed.2d 225 (1997). Our research has revealed that this is the view in the state courts as well. *E.g.*, *Wheeler Springs Plaza, LLC v. Beemon*, 71 P.3d 1258, 1260 (Nev.2003); *Moeller–Prokosch v. Prokosch*, 53 P.3d 152, 154 (Alaska 2002); *Insurance Corp. v. Barker*, 628 A.2d 38, 40 (Del.1993); *In re Marriage of Molloy*, 181 Ariz. 146, 149, 888 P.2d 1333, 1336 (App.1994). Indeed, it would be contrary to common sense "to suggest that we must defer to what a trial judge inferred

---

simply, any remand issued by this Court in a prohibition action will ordinarily be a general remand.

**10.** West Virginia Rule of Appellate Procedure 25 is patterned after Federal Rule of Appellate Procedure 41(a). *Compare* W. Va. R.App. P. 25(a) ("A certified copy of the judgment and a copy of the opinion of the Court, if any, and any direction as to the costs shall constitute the mandate, unless the Court directs that a formal mandate issue.") *with* Fed. R.App. P. 41(a) ("Unless the court directs that a formal mandate issue, the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs.") Although "[a] feder-

al case interpreting a federal counterpart to a West Virginia rule of procedure … is not binding or controlling[,]" Syl. Pt. 3, *Brooks v. Isinghood*, 213 W.Va. 675, 584 S.E.2d 531 (2003), it "may be persuasive." *Id.* Thus, we find federal cases interpreting Federal Rule of Appellate Procedure 41(a) to be persuasive.

**11.** *Phillip Leon M. v. Greenbrier County Bd. of Educ.*, 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996) ("Because interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a *de novo* review[.]"), *modified on other grounds by Cathe A v. Doddridge County Bd. of Educ.*, 200 W.Va. 521, 490 S.E.2d 340 (1997)

about our intent in what we wrote [in our mandate]." *Laitram,* 115 F.3d at 951 (emphasis deleted). We thus hold that a circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo.* Having set forth our standard of review, we now turn to the substantive issue before us and therefore answer the question: was our remand in *Frazier and Oxley I* limited so as to preclude St. James from amending its complaint? *See Moored,* 38 F.3d at 1421. In so answering, we examine each part of our opinion in *Frazier & Oxley I.*[12]

 In *Frazier & Oxley I,* Frazier & Oxley sought a prohibition which we granted, holding that the rights of a subtenant depend on whether the primary lease was "terminated," which would also terminate the sublease, or was "surrendered," which would not affect the sublease. *Frazier & Oxley I,* 212 W.Va. at 280, 569 S.E.2d at 802. After establishing these new points law, we observed

[t]his would be the end of our inquiry were it not for the settlement agreement which was executed between City National and Frazier & Oxley. Absent that agreement, we would simply reverse the circuit court's award of summary judgment in favor of City National and St. James and remand for a factual determination of whether a surrender of the prime lease occurred.

*Id.,* at 280, 569 S.E.2d at 802. We then recognized that if a subtenant consents to the surrender, the surrender ends any rights a subtenant has under the prime lease. We consequently examined the settlement agreement between Frazier & Oxley and City National to determine if it could be construed as Frazier and Oxley's consent to a surrender. *Id.* at 282–83, 569 S.E.2d at 803–04. We concluded that the settlement could not be construed as a consent. *Id.* at 283, 569 S.E.2d at 804. Given that we found the settlement agreement between City National and Frazier & Oxley did not have any relevance to the issue of whether the prime lease was terminated or surrendered, the operative part of the opinion in *Frazier & Oxley I* for determining the nature of our remand relates back to our observation that, but for the settlement agreement, we would have remanded the case back to the circuit court to conduct proceedings "for a factual determination of whether a surrender of the prime lease occurred." *Id.* at 281, 569 S.E.2d at 802 (footnote omitted). Consequently, our remand in *Frazier & Oxley I* was not a general remand opening all aspects of the case, but was a limited one encompassing only "a factual determination of whether a surrender of the prime lease occurred." The circuit court's decision to allow St. James to amend its complaint to add a new theory of recovery based on the recording act exceeded the limited remand in *Frazier & Oxley I.*

 St. James argues, however, that its discovery of the written sublease and Mr. Frazier's deposition constitute new evidence justifying departure from the mandate.[13]

---

12. Frazier & Oxley also posit that because St. James was aware of the sublease before the prohibition petition was filed in *Frazier & Oxley I,* this case falls under syllabus point 2 of *Dent v. Pickens,* 59 W.Va. 274, 53 S.E. 154 (1906), holding that the law of the case doctrine (unlike in the federal system, where "the law of the case doctrine does not apply [to] an issue ... not raised before the prior panel and thus ... not decided by it." *Yesudian ex rel. United States v. Howard Univ.,* 270 F.3d 969, 972 (D.C.Cir.2001)) extends "[n]ot only [to] all matters that were actually litigated, but also all others that the parties were bound, by the state of the pleadings, to assert, by way of defense to, or in support of, the demand or demands set up in a cause, are *res judicata* by the decision rendered therein." However, syllabus point 2 of *Dent* extends only to issues encompassed by the "state of the pleadings." Here, the pleadings in the case before St. James's motion to amend did not include the recording act claim. Therefore, *Dent* is inapplicable.

13. St. James points us to the syllabus of *Smith v. United Fuel Gas Company,* 115 W.Va. 127, 174 S.E. 782 (1934) holding that " [i]t is the general rule that a decision on a particular point on a former hearing will be regarded as the law of the case on a second appeal unless new pleadings and new evidence adduced on the subsequent trial call for a different judgment." *Smith's* syllabus dealt with the general law of the case doctrine as it applied to a "second appeal." In the instant case, we address the power of a trial court to depart from a mandate. *Smith* is thus not applicable as the law of the case doctrine under the mandate rule applies with greater strictness in the trial court than the general law of the case doctrine does in this Court. *See United States v. Tenzer,* 213 F.3d 34, 40 (2d

We have previously recognized that the discovery of new evidence could justify a departure from the mandate. Thus, in *State ex rel. Evelyn v. Madden,* 202 W.Va. 634, 637, 505 S.E.2d 697, 700 (1998) (per curiam) we refused a prohibition because "[w]hile the circuit court [was] technically in violation of this Court's mandate, it [was] apparent that, based on new information and evidence not available when this Court's prior decision was rendered, the circuit court's motivation [was] to promote the health and welfare of [the child in the case]." *See Standard Oil Co. v. United States,* 429 U.S. 17, 18, 97 S.Ct. 31, 32, 50 L.Ed.2d 21, 23 (1976) (per curiam) (holding that a trial court does not violate the mandate rule in addressing a Rule 60(b) motion in a case affirmed on appeal because "[l]ike the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events. Hence, the district judge is not flouting the mandate by acting on the motion."). However, the newly discovered evidence exception to the mandate rule, like the rule's other limited exceptions, is "narrowly configured and seldom invoked[,]" *United States v. Connell,* 6 F.3d 27, 31 (1st Cir.1993), being triggered only when " 'significant new evidence, not earlier obtainable in the exercise of due diligence[, has come to light][.]' " *United States v. Bell,* 5 F.3d 64, 67 (4th Cir.1993) (quoting *United States v. Bell,* 988 F.2d 247, 251 (1st Cir.1993)).[14] Here, we do not think St. James has met its heavy burden of demonstrating that significant new evidence, not earlier obtainable through the exercise of due diligence, has come to light.

In fact, St. James admits that on December 12, 2001, it received a copy of the written sublease. Thus, we cannot conclude that the written sublease was undiscovered at the time of the filing of the original prohibition petition in *Frazier & Oxley I* which occurred on February 14, 2002. Nor can we conclude that it was newly discovered evidence when St. James filed its motion to amend on February 3, 2003. Moreover, to the extent St. James claims that it needed Mr. Frazier's deposition to determine if its recording act claim was valid, it could have earlier secured such testimony by waiting to file its motion for partial summary judgment until after it had taken Mr. Frazier's deposition. St. James has failed to meet its burden of showing the testimony was not earlier obtainable. Finally, since Mr. Frazier testified that he did not know whether the sublease was recorded and St. James confirms that its title search revealed the sublease was not recorded—we find it difficult to conclude that Mr. Frazier's deposition testimony was significant. Simply put, St. James has not shown the circuit court was justified in departing from our limited remand.[15]

 Having found that the circuit court departed from our mandate without justification,[16] we must now determine if the writ of prohibition is an appropriate vehicle to enforce our remand. We so find. As the Texas Supreme Court held in *Cherokee Water Co.,* 698 S.W.2d at 366:

> When the opinion and mandate of this court prohibit relitigation of some issues on remand, or direct that only some expressly severed issues or causes may still be litigated, and the parties and trial court

Cir.2000) ("[T]he law of the case doctrine does not bind us with the same rigidity as it binds the district court."); *LaShawn A. v. Barry,* 87 F.3d 1389, 1393 n. 3 (D.C.Cir.1996) ("[A]n even more powerful version of the doctrine—sometimes called the 'mandate rule'—requires a lower court to honor the decisions of a superior court in the same judicial system.").

**14.** The other two exceptions to the mandate rule include a dramatic change in controlling legal authority or a showing that a blatant error in the prior decision will result in a manifest injustice if uncorrected. *Bell,* 5 F.3d at 67 (quoting *Bell,* 988 F.2d at 251). St. James has raised neither of these exceptions.

**15.** We add here that the law of the case doctrine is separate from the doctrine of stare decisis. Thus, only parties to a remanded case may invoke the exceptions to the law of the case doctrine. Non-parties to the case are bound by this Court's opinion under the general principles of stare decisis.

**16.** Because this case involves the mandate rule, we believe St. James's arguments relating to the liberality of amendments under Rule 15 are misplaced.

attempt relitigation beyond that which was expressly permitted, a writ of prohibition will issue to prohibit relitigation.

*See also Berthelot v. Dezso*, 86 Ohio St.3d 257, 259, 714 N.E.2d 888, 890 (1999) (per curiam) ("Writs of mandamus and prohibition are appropriate to require lower courts to comply with and not proceed contrary to the mandate of a superior court."); 63C Am. Jur.2d *Prohibition* § 66 at 44 (1997) (footnote omitted) ("When a trial court fails or refuses to obey or give effect to the mandate ...of the reviewing court, misconstrues it, or acts beyond its province in carrying it out, the appellate court may enforce compliance with its mandate ... by a writ of prohibition."). Thus, we hold that when a circuit court fails or refuses to obey or give effect to the mandate of this Court, misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition is an appropriate means of enforcing compliance with the mandate. Consequently, we grant the writ.[17]

### IV.

### CONCLUSION

For the preceding reasons, the writ of prohibition is granted and the order allowing the amendment to the complaint is vacated.

Writ granted.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

Justices McGRAW and ALBRIGHT dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting.

(Filed Dec. 8, 2003)

Although the majority accurately discusses the law with regard to remand after an appeal and addresses a related doctrine known as the law of the case, application of those principles to this case was not warranted given the jurisdictional basis for this Court's

ruling in *Oxley I*,[1] the extremely limited nature of our substantive rulings in *Oxley I*, and the absolute lack of procedural limitations placed on the lower court's actions by our previous ruling. Through its ruling in the case *sub judice*, an original jurisdiction petition for a writ of prohibition, the majority has denied to the lower court the power to make a procedural ruling which it has the discretion to make in a case over which it continues to have jurisdiction. Accordingly, I must respectfully dissent to the majority's decision.

Because our decision in *Oxley I* was to grant a writ of prohibition, nothing was before us in *Oxley I* regarding the underlying civil action except petitioners' successful effort to prevent enforcement of the lower court's grant of partial summary judgment in that underlying civil action. Accordingly, there was no prototypical remand in *Oxley I* in the sense that this Court directed the lower court to hold further proceedings for the purpose of resolving a particular factual or legal issue. Instead, this Court, through its issuance of a writ of prohibition in *Oxley I*, simply refused to allow the enforcement of a partial summary judgment ruling in the underlying case. Otherwise, the lower court retained jurisdiction of the underlying civil action throughout our consideration of *Oxley I* and this Court never acquired jurisdiction of that underlying civil action. Consequently, the effect of this Court's issuance of an extraordinary writ in *Oxley I* was merely to put the parties back in the midst of the litigation, headed for a trial on the issues presented. *See MOM Corp. v. Chattahoochee Bank*, 203 Ga.App. 847, 418 S.E.2d 74, 76 (1992) (recognizing that "[o]n a reversal of summary judgment, a case is remanded in the posture existing prior to summary judgment").

The majority's attempt to cloak its decision with legitimacy by suggesting that the law of the case prevents the lower court from granting a motion to amend a complaint was

---

17. Because we grant the writ of prohibition requested by Frazier & Oxley, we need not consider issuing a separate writ on behalf of City National as City National is a party of this litigation only as a result of the now prohibited amended complaint.

1. *See State ex rel. Frazier & Oxley, L.C. v. Cummings*, 212 W.Va. 275, 569 S.E.2d 796 (2002) (granting writ of prohibition to prevent enforcement of partial summary judgment ruling).

exceedingly imprudent. Had this Court through its ruling in *Oxley I* expressly ruled that no amendments to the complaint could be entertained, then the law of the case doctrine would prevent the trial court from subsequently allowing such an amendment. Instead, under the guise of a supposed failure of the lower court to observe our mandate in *Oxley I* (including our opinion in that proceeding), this Court has stripped the trial judge of his discretion to permit an amendment of the pleadings by characterizing his decision in that regard as being in excess of his jurisdiction, and thereby justifying the issuance of a second writ of prohibition. The trial judge clearly acted within his jurisdiction and is vested by our law with discretion to permit an amendment of the pleadings. The most this Court might say if his ruling were later to come before us on appeal, and we disagreed with his decision regarding amendment of the pleadings, is that the trial court abused that discretion. Such an abuse of discretion, however, does not constitute an act in excess of a lower court's jurisdiction and is an insufficient basis for the issuance by this Court of a writ of prohibition, as was done in this case.

To justify its inappropriate and untimely intrusion upon the discretion vested in the trial court, the majority concludes that the trial court disregarded the law of the case. That is wholly unjustified. In fact, in just over three pages of discussion in *Oxley I*, this Court made only one ruling that could be viewed as controlling under the law of the case doctrine: That the settlement agreement between the parties was ambiguous. Were the trial court to have sought to uphold the settlement agreement following the issuance of the writ of prohibition, the law of the case would have controlled and prevented the enforcement of such a ruling. No such ruling was made by the trial court.

Instead the majority seeks to elevate what is merely dicta in *Oxley I* to the status of binding direction to the trial court. The

majority asserts that our speculative comment that "[a]bsent that [settlement] agreement, we would simply reverse the circuit court's award of summary judgment ... and remand for a factual determination of whether a surrender of the prime lease occurred" constituted a binding direction to the trial court which prohibited consideration of any motions to amend the pleadings.[2] 212 W.Va. at 281, 569 S.E.2d at 802. The fact is that this Court issued a straightforward writ of prohibition simply prohibiting the enforcement of the lower court's partial judgment order. The writ in *Oxley I* was not moulded in any manner to instruct the lower court to do or not do anything else in the underlying case.

Critically, the majority seeks to apply the law of the case doctrine to bar the lower court from its jurisdictional right to make discretionary rulings on matters of procedure in cases over which it has, and has always retained, original jurisdiction rather than, as might have been appropriate, to bar additional litigation of a substantive matter that might have been—but was not in *Oxley I*—ruled upon and resolved by this Court. The law simply does not bind the hands of a trial court in the manner imposed by the majority here. While the law of the case doctrine bars reopening or reconsideration of a question of law or fact that has been definitively determined by this Court,[3] it does not abrogate the lower court's authority to consider motions for the addition of new parties or the amendment of pleadings or the taking of additional evidence. *See Cauble v. Cauble*, 133 N.C.App. 390, 515 S.E.2d 708 (1999) (holding that trial court on remand could in its sole discretion receive such further evidence and argument from parties as it deemed necessary and appropriate); *Chattahoochee Bank*, 418 S.E.2d at 75 (finding that failure of appellate court upon reversal of summary judgment to expressly direct taking of new evidence did not prohibit lower court from receiving additional evidence on

---

**2.** Even if this statement the majority relied upon is viewed as direction to resolve this factual issue, nothing in *Oxley I* directly or indirectly precluded the lower court from considering a properly presented issue of procedure such as a motion to amend the complaint. Simply put, the

majority goes too far in its attempt to control the actions of the trial court.

**3.** *See generally Windon v. Stewart*, 48 W.Va. 488, 37 S.E. 603 (1900).

remand); *Blue v. Campbell,* 57 W.Va. 34, 49 S.E. 909 (1905) (observing that even absent directions to permit amendment of pleadings, such amendment may occur on remand); *see also* Syl. Pt. 5, *Maynard v. Hammond,* 139 W.Va. 230, 79 S.E.2d 295 (1953) ("The determination of an issue in an extraordinary proceeding in this Court constitutes the law of the case in a subsequent proceeding on writ of error or appeal wherein the real parties in interest and the issues are the same, and there has been nothing new injected by pleadings or evidence which calls for a different conclusion."); Syl. Pt. 2, *Moran v. Lecco- ny Smokeless Coal Co.,* 124 W.Va. 54, 18 S.E.2d 808 (1942) ("In the absence of new pleadings, or new evidence, calling for a different judgment, the decisions of this Court in a suit or action brought before it for review will be treated as the law of the case on second appeal or writ of error."); Syl. Pt. 2, *Keyser Canning Co. v. Klots Throwing Co.,* 98 W.Va. 487, 128 S.E. 280 (1925) ("The decision of this court on a particular point on a former hearing will be regarded as the law of the case on a second appeal, unless new pleadings and new evidence adduced on the subsequent trial call for a different judgment.")

In reaching its decision, the majority completely sidesteps the fact that discretion remains in the trial court on remand[4] as to matters that routinely fall within the lower court's decision making authority. *See generally* 5 Am.Jur.2d *Appellate Review* § 786 (1995) (observing that trial courts are vested with broad discretion regarding handling of matters remanded with general directions for further proceedings); 1B Michie's Jurisprudence *Appeal and Error* § 342 (stating that while mandate controls as to matters within its compass, lower court is free as to other issues left open on remand).

While the majority waxes on about how the trial court acted counter to its mandate, the mandate was issued without any specific directions on its face or in the accompanying opinion. That mandate, which the majority chose not to recite in its opinion, says noth-

ing other than the writ of prohibition is granted and "this action is remanded to the Circuit Court of Cabell County for further proceedings in accordance with the written opinion." The opinion, which is viewed as part of the mandate, is also without direction as to what specific action the trial court is supposed to take, or not take, when the matter is permitted to proceed before the lower court. *Oxley I* closes with a simple holding that summary judgment was wrongly granted. No guidelines for remand were provided by this Court and consequently no limits were placed on the trial court's actions other than to act consistent with the mandate.

By failing to heed the significance of the special nature of the Court's prohibition jurisdiction in *Oxley I,* the majority overlooks the rationale underlying the rule of the case doctrine. Our review in cases that are accepted pursuant to this Court's extraordinary jurisdiction is by design more circumscribed than in matters that are reviewed under our general appellate jurisdiction. As was the case in both *Oxley I* and *II,* extraordinary jurisdiction cases typically involve consideration of limited issues and often require a decision before the case has been fully litigated. What the rule of the case doctrine is aimed at preventing is relitigation of issues that have been fully addressed by an appeals court. In marked contrast to a case that is properly remanded by this Court following appeal, our scope of review in *Oxley I* was confined to considering solely the partial summary judgment issue, based on a limited factual development. In setting aside the lower court's judgment, this Court decided a single, narrow question of law. Because we did not decide the ultimate issue in *Oxley I* concerning the underlying case—whether a surrender of the prime lease had occurred— and did not give the Circuit Court of Cabell County any direction related to that ultimate issue, the majority's reliance on the rule of the case doctrine as barring the circuit court's discretionary grant of a motion to amend pleadings is clearly wrong. *See Chat- tahoochee Bank,* 418 S.E.2d at 75 (holding

---

4. While I strongly disagree with the majority's position that this Court "remanded" the case to the trial court upon our issuance of the writ in

*Oxley I,* I use the term remand solely to respond to the analysis employed by the majority in deciding this case.

that "following appellate review of summary judgment, 'the law of the case' rule does not limit or prohibit the trial court from receiving new evidence which changes the evidentiary posture of the case").

To suggest that the trial court was essentially thumbing its nose at this Court's rulings by permitting an amended complaint to be filed when this Court made no determination on the ultimate issue, in my opinion, is an injudicious and unjustified attempt to broaden the law of the case doctrine.[5] Furthermore, to conclude, as did the majority, that the trial court failed to adhere to the scope of the mandate is an undeniable and indefensible reach given that the mandate issued by this Court in *Oxley I* imposed no limitations on the trial court other than a reversal of its grant of partial summary judgment based on the ambiguous terms of the settlement agreement.[6] The majority opinion is patently unfair to the circuit judge because this Court gave him no reason whatsoever to conclude that he had been deprived of discretion to permit subsequent amendment of the pleadings. A review of his exercise of that discretion might have been appropriate upon appeal of the underlying case but not by way of the instant writ of prohibition

I would have refused the writ in this case and allowed the matter to proceed to trial without further interference by this Court. I cannot escape the conclusion that the majority's view of this case proceeds, at least in part, from a settled effort to choose the winner before the relevant issues have been fully tried and heard.

I further observe that this case illustrates an unfortunate confusion that has slipped into the practice and procedures of this Court which should be remedied by us in future cases. The majority's entire discussion about remands is misplaced in this case and the inclusion in the mandate in *Oxley I* of language about a "remand" underlines the problem.

When a case is before us on appeal, where we have taken appellate jurisdiction of a matter first heard in a lower tribunal, we do indeed "remand" that case to a lower tribunal, most often with directions that bind and direct the lower court. Those directions may be expressed in the opinion which forms a part of our judgment in the case but may also be set forth *in extenso* in the mandate.

On the other hand, when we undertake a ruling in a case where we are exercising original jurisdiction, such as mandamus or prohibition, we do not proceed based on the case that was initiated in the lower court, although we may indeed have before us certain facts or rulings developed in a lower court. We may, in exercising our original jurisdiction, impose one or more directions on a lower court applicable to and forming a part of the law of a case then pending in that lower court. Importantly, the case proceeds in a manner that is separate from and thus viewed as extraordinary in comparison to our appellate jurisdiction. The relief we grant in that situation is awarded by a writ. It may be a simple, straightforward direction to the lower court; it may be a more complex, multi-faceted directive. In the former case, the relief awarded is by means of a writ; in the latter case, it most often is a moulded writ. What it is not is a "remand."[7]

Unfortunately, a search of our order books discloses that on numerous occasions this Court, and on occasion, this author, has spoken in original jurisdiction cases of "remanding" the case and the mandate has, on occasion also utilized such "remand" language. We should stop both practices immediately. Upon appeal we may remand. In an original

---

5. I also take issue with the majority's characterization of the basis for the amended complaint as involving a new theory of the case, as the issue sought to be included in the litigation was a matter of proof based on the alleged failure to record and not an entirely new approach to the case.

6. Moreover, I cannot but conclude that an insurmountable burden has been inflicted on the circuit courts as a result of *Oxley II* if trial courts

will uniformly be held accountable for guessing what this Court has in mind with regard to the limits imposed on a lower court's authority following a directionless remand.

7. While the majority posits that a "remand" following *Oxley I* was ordered, the correct usage of that term cannot result in relief that this Court did not award.

jurisdiction case, we may grant a straightforward writ or mould it in one or more particulars. However, in such original jurisdiction cases we should be careful not to assert that we "remand." [8] We should stop that practice now!

For the above stated reasons, I respectfully dissent.

McGRAW, Justice, dissenting.

(Filed Dec. 10, 2003)

It is clear that Rule 15 of the West Virginia Rules of Civil Procedure provides that a party may amend a pleading by leave of the court and "leave shall be freely given when justice so requires." W. Va. R. Civ. P. 15 (2003). The Rules favor the resolution of claims rather than their exclusion. As this Court has often noted "[i]t is well established that 'complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure.'" *Whorton v. Malone,* 209 W.Va. 384, 390 n. 6, 549 S.E.2d 57, 63 n. 6 (2001); accord, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995); *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978); *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 245 S.E.2d 157 (1978). In light of this authority, I believe that the lower court was correct in allowing St. James to amend its complaint. Therefore, I must respectfully dissent.

MAYNARD, J., concurring.

(Filed Jan. 6, 2004)

I fully concur in the majority opinion. As the author of the Court's opinion in *Frazier & Oxley I,* though, I feel it incumbent on me to briefly address the contentions of my dissenting colleague and explain why, in light of the posture of *Frazier & Oxley I,* I do not find them to be compelling.

In *Frazier & Oxley I,* St. James originally brought only one claim against Frazier & Oxley, a claim that the ending of the prime lease agreement between City National Bank and St. James terminated Frazier & Oxley's sublease. Even though St. James knew as early as December 12, 2001, about the sublease, the company did not file a motion to amend its complaint at that time; rather, it chose to forego further discovery on the potential recording act claim and instead file a motion for partial summary judgment on the only claim that it had brought-the termination claim. Even after Frazier & Oxley sought a writ of prohibition before this Court, St. James did not indicate to this Court that it had another potential basis of recovery against Frazier & Oxley. It was only after this Court ruled against St. James and issued the writ of prohibition that St. James returned to circuit court and sought to add the additional recording act claim to its complaint.

It is important to realize that when this case initially came before us, St. James emphasized the need to rapidly resolve it [1] based on the fact that it was receiving only $250.00 a month in rent from Frazier & Oxley and St. James believed the mezzanine was actually worth anywhere from $2,000 to $4,000 per month in rent. In light of this, even though we issued a prohibition against Judge Cummings on the grant of partial summary judgment, we acceded to St. James's desire to rapidly resolve the case, returning the case to circuit court for the limited purpose of "a factual determination of whether a surrender of the prime lease occurred." It was only then, after we returned the case to the circuit court for a determination of the single claim that St. James chose to pursue up to that point, that it sought to amend its complaint to add another count.[2]

---

**8.** I am not speaking here of original jurisdiction cases where we remand the entire extraordinary remedy case to a lower court for factual development after we have accepted original jurisdiction.

**1.** Indeed, St. James requested an expedited trial date and filed its motion for partial summary judgment less than three months after filing its complaint, *State ex rel. Frazier & Oxley,* 212

W.Va. 275, 279, 569 S.E.2d 796, 800 (2002), and, then, after only limited discovery. *Id.* at 280, 569 S.E.2d at 801 ("St. James believes discovery is complete because the circuit court needed only five documents in order to make a ruling in this case [.]").

**2.** Of course, nothing prevented St. James from simultaneously filing both its partial motion for summary judgment and a motion to amend its

In light of St. James's expressed desire in *Frazier & Oxley I* to secure a determination of its rights as rapidly as possible and, in so doing, its failure to express to us therein that it was aware that another possible theory was available, our decision in *Frazier & Oxley I* was clearly a limited remand designed to grant each party as much of their requested relief as possible while still protecting the rights of all parties involved. Thus, no one should take the majority opinion in *Frazier & Oxley II* out of the factual and procedural context of *Frazier & Oxley I*.

With a full understanding of the background to *Frazier & Oxley I*, I think it is apparent that the dissent's dire predictions and characterizations of the effects of *Frazier & Oxley II* are not well founded. With those clarifications, I fully concur in the majority opinion.

pleading if the summary judgment was unsuccessful. Instead, St. James decided to bank on obtaining victory under the single count of the complaint by filing only a motion for partial summary judgment and foregoing further discovery related to the lack of recordation of the sublease-a lack of recordation known to St. James at least as early as December 12, which was well before St. James filed its motion for partial summary judgment on January 22, 2002.