**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**October 2, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* N.R., A.R.-1, and A.W.

**No. 20-0202 & 20-0204** (Ohio County 13-CJA-33, 14-CJA-76, 14-CJA-77, and 14-CJA-78)

### CORRECTED MEMORANDUM DECISION

Petitioners, Mother A.R.-2, by counsel David C. Fuellhart, and Father A.R.-3, by counsel Jeremy B. Cooper, appeal the Circuit Court of Ohio County's January 27, 2020, order terminating their parental rights to N.R., A.R.-1, and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying their respective motions to transfer the proceedings to the Indian Tribal Court.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in denying petitioners' motions on the basis that they did not have standing. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand the matter.

Many of the pertinent facts of this case are set forth in our prior opinion, *In re N.R.*, 242 W. Va. 581, 836 S.E.2d 799 (2019). Briefly, the circuit court "entered a final dispositional order . . . pursuant to West Virginia Code § 49-4-604(b)(5) (2016), placing the children . . . in the legal and physical custody of the [DHHR] upon finding that the abusing parents were presently unable

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Further, because one of the children, the mother, and the father share the same initials, we refer to them as A.R.-1, A.R.-2, and A.R.-3, respectively, throughout this memorandum decision.

to adequately care for their children." *Id*. at --, 836 S.E.2d at 802. The parents appealed and argued that the circuit court failed to comply with the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901 to -1923, and sought to dismiss the case. *Id*. The DHHR and guardian filed separate appeals, arguing that the circuit court erred in failing to terminate the parents' parental rights. This Court found "no violation of the ICWA" and further found that "the circuit court erred by not terminating the mother's and father's parental rights." *Id*. Accordingly, we reversed the circuit court's order "only insofar as it orders disposition under West Virginia Code § 49-4-604(b)(5)[(2019)]" and remanded "for entry of a final dispositional order terminating the [parents'] parental rights pursuant to West Virginia Code § 49-4-604(b)(6)[(2019)]." The above-mentioned opinion was filed on November 7, 2019, and the mandate was issued on January 9, 2020.

On November 13, 2019, both parents filed motions to transfer the proceedings from the circuit court to the Indian Tribal Court of the Manchester-Point Arenas Band of Pomo Indians, pursuant to 25 U.S.C. § 1911(b). Later in November of 2019, the circuit court denied both motions on the basis that the parents lacked standing pursuant to this Court's opinion. On January 27, 2020, the circuit court modified its prior dispositional order and terminated the parents' parental rights. Petitioners now appeal.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners argue that the circuit court erred in denying their motions to transfer the proceedings to Indian Tribal Court. Petitioners argue that the circuit court incorrectly denied these motions on the basis of standing. Although this Court's prior opinion in *In re N.R.*

---

[2]The parents' parental rights were terminated below. According to the parties, the permanency plan for the children is adoption in their respective foster placements.

directed the circuit court to terminate petitioners' parental rights, petitioners aver that they retained their parental rights until the circuit court entered an order terminating their parental rights. Therefore, at the time that the circuit court denied their motions, they had standing under the ICWA to move for the transfer of the proceedings. We agree.

In the context of West Virginia abuse and neglect proceedings, we have recognized that

[a] final order terminating a person's parental rights, as the result of either an involuntary termination or a voluntary relinquishment of parental rights, completely severs the parent-child relationship, and, as a consequence of such order of termination, the law no longer recognizes such person as a "parent" with regard to the child(ren) involved in the particular termination proceeding.

Syl. Pt. 4, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007). We have further held that, following the severance of the parent-child relationship, the individual "does not have standing as a 'parent,' pursuant to [West Virginia Code § 49-4-606], to move for a modification of disposition of the child with respect to whom his/her parental rights have been terminated." *Id,* at 251, 654 S.E.2d at 375, syl. pt. 6, in part. Accordingly, our prior holdings provide that an individual retains standing to act as a parent while their parental rights to their respective children remain intact.

25 U.S.C. § 1911(b) permits the parents of Indian children to petition state courts to transfer certain proceedings to the children's respective tribal courts:

[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

According to the relevant federal regulations, "[e]ither parent, the Indian custodian, or the Indian child's tribe may request, *at any time*, orally on the record or in writing, that the State court transfer a foster-care or termination-of-parental-rights proceeding to the jurisdiction of the child's Tribe." 25 C.F.R. § 23.115 (emphasis added). At the time the circuit court denied petitioners' motions, they were the biological parents of Indian children who were subject to a West Virginia state court proceeding for the determination of their foster care placement.[3] As

_____

[3]Notably "foster care placement" is defined in 25 U.S.C. § 1903(1)(i) as

any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or

(continued . . . )

3

parents with their parental rights intact to the Indian children at issue, petitioners had standing to bring a motion to transfer the proceedings to the Indian tribal court.

For the foregoing reasons, we vacate the circuit court's November 18, 2019, and November 22, 2019, orders denying petitioners' respective motions to transfer the proceedings to the Indian tribal court and remand the matter to the circuit court for an adjudication of these motions on the merits.[4] If a circuit court, or another party, asserts that good cause to deny the transfer exists, then all parties must be granted an opportunity to provide their views on the matter.[5] The circuit court is hereby ordered to hold the appropriate hearings and issue a final order in this case within sixty days. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

---

conservator where the parent or Indian custodian cannot have the child returned upon demand, but *where parental rights have not been terminated.*

(Emphasis added). Based upon the plain language of this statute, a parent loses standing to transfer the proceedings if their parental rights are severed. *See also* 25 U.S.C. §1903 (1)(ii) ("termination of parental rights" is defined as "any action resulting in the termination of the parent-child relationship"). Following the termination of parental rights, the resulting proceedings would be considered "preadoptive placement" or "adoptive placement" of the children, which are not controlled by 25 U.S.C. §1911. *See* 25 U.S.C. § 1903(1).

[4]Upon receipt of a petition for transfer, the "State court must transfer the child-custody proceeding unless the court determines that transfer is not appropriate because one or more of the following criteria are met: (a) Either parent objects to such transfer; (b) The Tribal court declines the transfer; or (c) Good cause exists for denying the transfer." 25 C.F.R. § 23.117. Critically, "[i]f the State court believes, or any party asserts, that good cause to deny transfer exists, the reasons for that belief or assertion must be stated orally on the record or provided in writing on the record and to the parties to the child-custody proceeding" and "[a]ny party to the child-custody proceeding must have the opportunity to provide the court with views regarding whether good cause to deny transfer exists." 25 C.F.R. §§ 23.118(a) & (b).

[5]Consistent with their previous positions on appeal, the DHHR and the guardian represent that the children do not wish to be moved to California to live on the Manchester-Point Arena Band of Pomo Indian Tribe's reservation and, now, refuse to move to any other foster home. *See In re N.R.*, 242 W. Va. at -- n.23, 836 S.E.2d at 814 n.23. These concerns are relevant when determining whether good cause to deny the transfer exists. The circuit court may also consider the timeliness of the petition to transfer, the children's contact with the tribe, and whether transfer would result in undue hardship to parties or witnesses. *See People in Interest of J.J.*, 454 N.W.2d 317 (1990) (finding good cause existed not to transfer proceeding when the children were over five years of age with little or no contact with tribe, evidence in case could not be adequately presented to tribal court without undue hardship to parties and witnesses, and petition to transfer was untimely). Finally, we remind the circuit court that "[t]his Court has repeatedly stated that a child's welfare acts as 'the polar star by which the discretion of the court will be guided.'" *In re Timber M.*, 231 W. Va. 44, 59, 743 S.E.2d 352, 367 (2013).

4

Vacated and remanded.

**ISSUED**: October 2, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**

Justice Margaret L. Workman

Workman, J., dissenting:

I dissent from the majority opinion because, figuratively speaking, it continues after seven years to administer "death by due process" to three young children who have suffered not only long-term serious and aggravated physical abuse from their parents, but sustained abuse by a legal system that seems to want to count how many angels can dance on the head of a pin[6] rather than giving these kids the emotional safety of a forever family to which their entitlement is long overdue.

These West Virginia abuse and neglect proceedings were initiated because petitioner father admitted to causing N. R. to sustain two fractures: a classic metaphysical fracture of the left distal tibia (also referred to as a bucket handle fracture) and a left clavicle fracture. *In re N.R.*, 242 W. Va. 581, 836 S.E.2d 799, 803 (2019), *cert. denied sub nom. Rios v. W. Virginia Dep't of Health & Human Res.*, 140 S. Ct. 1550, 206 L. Ed. 2d 385 (2020) ("*N. R. I*"). But even before that, there were abuse and neglect proceedings in Hawaii based on aggravated physical abuse when the children were even younger. Enough is enough. These children have rights, too.

None of this discussion is intended to denigrate the importance which the United States Congress has accorded the preservation of the Native American culture through the Indian Child Welfare Act ("ICWA").[7] But examining the history of this case, Justice Hutchison,

---

[6] The phrase "how many angels can dance on a pin" became a symbol for the silly and pointless sophistry of medieval scholastics. *See* philosophy.stackexchange.com.

[7] However, A. W. is not an Indian child as defined by the ICWA. *See N. R. I*, 242 W. Va. at ___, n.6, 836 S.E.2d at 803 n.6.

writing for the Court in our earlier decision *N. R. I*, painstakingly went through every aspect of the lower court's compliance with the Act. The tribe had the effective right to intervene and enjoyed the right to participate fully below. However, now that the parents' rights have been terminated, the parents file the instant appeal on behalf of the tribe. The tribe went along with the state proceedings so long as they were satisfied with the results, and still do not appeal. Only now that the case has been fully litigated below for a period of seven years is the request to transfer to the Indian tribunal made. More death by due process.

I agree with the lower court that the two parents, who have been so consistently abusive to these three children for most of their lives, do not have standing to carry the tribe's water in this appeal which is ostensibly based on their desire for the tribe to be heard, when in fact both they and the tribe have been thoroughly heard. I would, however, characterize what the circuit judge called "standing" more in this fashion: our Court held in *Alonzo v. Jacqueline F.*, 191 W. Va. 248, 445 S.E.2d 189 (1994) that, once a petition alleging abuse and neglect is filed, the parents/custodians whose children are the subject of those proceedings have no right to decide the proper placement and/or disposition. Now while the tribe did not appeal, they want to ride on the coattails of the abusive parents, while the abusive parents have no case so they attempt to ride on the coattails of the tribe. Again, enough is enough. The children deserve security and finality.

Although the ICWA provides parents have the right at any point to seek transfer of the proceedings to an Indian Tribal Court, they let all the proceedings go forth in West Virginia courts and only sought to raise this issue when they didn't get the result they sought to obtain. For far too long courts generally have treated children's rights only in the context of competing sets of adults' rights.[8] I daresay that Congress enacted the ICWA not to benefit abusive parents nor to benefit the tribe leaders. Even its title suggests that its purpose is to protect Indian children.

If the "Enough is Enough" principle as applied to the child misery index isn't sufficient and the majority just wants to keep providing death by due process for another number of years, here is additional reasoning that the true legal scholar might prefer as an analytical framework. The majority has mistakenly interpreted this case as one of "standing," when it is more correctly characterized as one of jurisdiction.[9] In *N. R. I*, this Court reversed the circuit court's entry of a final dispositional order pursuant to West Virginia Code § 49-4-604(b)(5) (2016) and remanded for termination of their parental rights:

---

[8] *See* Syl. Pt. 7, *Matter of Brian D.*, 194 W. Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren).")

[9] In fairness, the circuit court likewise characterized its refusal of petitioners' motion as one of "standing." In reality, however, it was clearly attempting to properly effectuate the mandate rule, as more fully described herein.

6

For the foregoing reasons, the August 31, 2018, order of the Circuit Court of Ohio County is reversed only insofar as it orders disposition under West Virginia Code § 49-4-604(b)(5), and this case is remanded for entry of a final dispositional order terminating the mother's and father's parental rights pursuant to West Virginia Code § 49-4-604(b)(6).

242 W. Va. at ___, 836 S.E.2d at 817.

Further, under Rule 26 of the West Virginia Rules of Appellate Procedure, only the issuance of the mandate terminates this Court's jurisdiction. "Once this Court takes jurisdiction of a matter pending before a circuit court, the circuit court is without jurisdiction." Syl. Pt. 3, *Fenton v. Miller*, 182 W. Va. 731, 391 S.E.2d 744 (1990). Therefore, at the time of the filing of petitioners' motion to transfer, this Court continued to have jurisdiction over the matter; that jurisdiction did not terminate until January 9, 2020 when the mandate was issued.[10]

Upon issuance of the mandate, the circuit court may then act *only* according to the mandate. The "mandate rule" provides:

> A circuit court has no power, in a cause decided by the Appellate Court, to re-hear it as to any matter so decided, and, though it must interpret the decree or mandate of the Appellate Court, in entering orders and decrees to carry it into effect, any decree it may enter that is inconsistent with the mandate is erroneous and will be reversed. Syl. Pt. 1, *Johnson v. Gould*, 62 W.Va. 599, 59 S.E. 611 (1907).

*State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003). With respect to limited remands, such as the one issued in *N. R. I*, the Court has held:

> When this Court remands a case to the circuit court, the remand can be either general or limited in scope. *Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate.* General remands, in contrast, give circuit courts authority to address all matters as long as remaining consistent with the remand.

---

[10] Rule 50 of the West Virginia Rules of Procedure for Child Abuse and Neglect provides that an automatic stay does not occur in abuse and neglect cases. However, clearly this Rule simply allows for the lower court to take actions necessary to continue to protect the children; it does not suggest that the lower court has jurisdiction and authority to effectuate a transfer of the case to another tribunal while an appeal is pending.

Syl. Pt. 2, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 805, 591 S.E.2d 728, 731 (2003) (emphasis added). As we acknowledged in *Frazier*, "[u]nder a limited remand, 'the court on remand is precluded from considering other issues, or new matters, affecting the cause.'" Id. at 809, 591 S.E.2d at 735 (quoting 5 Am.Jur.2d *Appellate Review* § 787 at 455 (1995)).

Therefore, despite the fact that petitioners filed an extra-jurisdictional motion below, the circuit court on remand was obligated to apply this Court's mandate as written and had only authority to terminate petitioners' rights as determined and directed in *N. R. I*. Accordingly, I respectfully dissent.