# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Cassandra W.,**
**Respondent Below, Petitioner**

**vs)  No. 15-1247** (Kanawha County 02-D-387)

**Scott M.,**
**Petitioner Below, Respondent**

**FILED**

**September 23, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Cassandra W.,[1] appearing pro se, appeals the December 9, 2015, order of the Circuit Court of Kanawha County denying her appeal from a November 6, 2015, order of the Family Court of Kanawha County. In its November 6, 2015, order, the family court (1) ordered petitioner to pay Respondent Scott M. $380.70 per month in child support for the period from June 1, 2014, to September 30, 2014; (2) ordered respondent to pay petitioner $91.28 per month in child support for the period from October 1, 2014, to December 31, 2014; and (3) ordered respondent to pay petitioner $11.98 per month in child support for the period commencing on January 1, 2015, and continuing until further order of the court. Respondent, by counsel Clinton W. Smith, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

For the reasons expressed below, we reverse the decision of the family court. With regard to the period from June 1, 2014, to September 30, 2014, we remand this case to the family court for (a) a new hearing and specific findings regarding respondent's expenses during his

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

unemployment; and (b) a child support calculation that shall include $48,000 that respondent had in his savings account at the time of his petition for modification, to the extent that such inclusion is equitable in light of the parental obligation to provide support to the parties' dependent child. With regard to the period from October 1, 2014, to December 31, 2014, we remand the case for the entry of an order setting respondent's child support obligation at $104.63 per month in accordance with the worksheets attached hereto. With regard to the period commencing on January 1, 2015, we remand the case for the entry of an order setting respondent's child support obligation at $20.77 per month also in accordance with the worksheets attached hereto.

The parties were never married. They have one child together, who was born on September 1, 1998. The child has spent fifty percent of her time with each parent since respondent's return to West Virginia in 2014. On March 25, 2014, respondent filed a petition for modification to have his child support obligation reduced from $1,442.69 per month. Respondent's child support obligation of $1,442.69 per month reflected his substantial salary from his employment as a civilian contractor in Afghanistan.[2] Respondent separated from that employment on January 20, 2014.

In *Cassandra W. v. Scott M.*, No. 14-1002, 2015 WL 3448211, at *5 (W.Va. May 29, 2015) (memorandum decision), this Court affirmed, in part, and reversed, in part, the family court's July 15, 2014, order that neither party owed child support beginning on June 1, 2014. We affirmed the family court's finding that respondent should not have income attributed to him pursuant to West Virginia Code § 48-1-205 because (1) respondent left his employment in Afghanistan involuntarily; and (2) respondent was pursuing a plan of economic self-improvement that will result in an economic benefit to the parties' child.[3] *Id.* at *3. We reversed the July 15, 2014, order because it constituted legal error for the family court to adopt respondent's proposal that he (a) be attributed income at the federal minimum wage—contrary to the family court's findings that the attributed income statute did not apply—and (b) be allowed to waive the child's right to receive support under any new child support calculation. *Id.* at *4

This Court remanded the case for a new hearing at which the family court was directed to "consider [Scott M.]'s savings [of $48,000] . . . to determine child support." *Id.*, at *5. The Court explained, as follows:

> In *Adkins v. Adkins*, 221 W.Va. 602, 609, 656 S.E.2d 47, 54 (2007), we determined that when an obligor parent is terminated from his job involuntarily and West Virginia Code § 48-1-205 does not apply to allow his pre-termination income to be attributed to him, a child support order still may be entered with regard to that parent provided that the order reflects the parent's actual income and other resources during the period of unemployment. We explained that "parents have an abiding duty to provide support for their dependent children" and that "[c]ourts

---

[2]Respondent is a licensed electrician.

[3]Respondent testified that he was enrolled in training to learn how to program routers and build networks.

remain obligated under the relevant statutory guidelines for child support awards to consider all sources of income *or other property* when calculating support payments initially or upon modification." *Id.* (emphasis added). As petitioner points out, West Virginia Code § 48-13-102 provides that the child has a right to share in her father's resources. We note that $48,000 is not an insignificant amount of money from which a person may not only provide for himself, but also for his child. . . .

*Id.*

Pursuant to this Court's remand, the family court held hearings on August 4, 2015, and October 20, 2015.[4] Following those hearings, the family court entered an order on November 6, 2015, which set the parties' respective child support obligations from June 1, 2014. The family court (1) ordered petitioner to pay respondent $380.70 per month for the period from June 1, 2014, to September 30, 2014; (2) ordered respondent to pay petitioner $91.28 per month for the period from October 1, 2014, to December 31, 2014; and (3) ordered respondent to pay petitioner $11.98 per month for the period commencing on January 1, 2015, and continuing until further order of the court. Petitioner appealed the family court's November 6, 2015, order to the circuit court which denied her appeal in a one-page order entered December 9, 2015.

Petitioner appealed the circuit court's denial of her appeal to this Court and also filed a motion for a stay of the family court's November 6, 2015, order. By an order entered January 5, 2015, this Court stayed the November 6, 2015, order pending the resolution of petitioner's appeal.

We review the matter under the following standard:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Petitioner raises assignments of error with regard to each of the periods for which the family court set child support in its November 6, 2015, order.

Period from June 1, 2014, to September 30, 2014.

With regard to the period from June 1, 2014, to September 30, 2014, petitioner asks us to

---

[4]We will relate pertinent portions of the parties' testimony and evidence at the August 4, 2015, and October 20, 2015, hearings—and the family court's rulings regarding the same—during our discussion of the issues raised in this appeal. *See infra*.

(1) revisit our affirmation of the family court's finding that respondent should not have income attributed to him; and (2) alternatively, find that the family court failed to follow our directive in *Cassandra W.* to include the $48,000 that respondent had in his savings account in its child support calculation for the period when respondent was unemployed. We decline petitioner's invitation to revisit our prior ruling regarding income attribution. However, we agree with petitioner that the family court failed to include the $48,000 that respondent had in his savings account in its child support calculation.

While recognizing that the issue of income attribution was resolved in respondent's favor,[5] petitioner contends that the family court erred in finding that, pursuant to W.Va. Code § 48-1-205(c)(2), respondent was pursuing a plan of economic self-improvement that would result in an economic benefit to the parties' child. Respondent counters that we should not revisit an issue that we have previously decided. We agree with respondent.

"The general rule is that when a question has been definitely determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." Syl. Pt. 3, *Phares v. Brooks*, 214 W.Va. 442, 590 S.E.2d 370 (2003) (internal quotations and citations omitted). In *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 811 n.13, 591 S.E.2d 728, 737 n.13 (2003), this Court noted that the law of the case doctrine does not bind it as strictly as the doctrine binds lower courts. In the instant case, we find that petitioner's proffered justification for revisiting whether respondent should have income attributed to him is contrary to a finding the family court made in the order currently under appeal. The family court found that respondent is "continuing to finish" his training on router programming and network building. At the August 4, 2015, hearing, respondent testified that preparation for sitting for the certification examination requires both independent study and taking practice tests.

Petitioner asserts that, if respondent does not take the examination soon, the parties' child will not benefit from her father's new certification before she attains her majority. *See* W.Va. Code § 48-1-205(c)(2) (providing that income shall not be attributed when the parent's plan of self-improvement will result in an economic benefit to the child within a reasonable time). We find petitioner's argument unpersuasive for two reasons. First, since October of 2014, respondent has been gainfully employed, so respondent has actual income on which his child support obligation is now based. Second, for the period when respondent was unemployed, as explained *infra*, the family court's decision is reversed, in part, and the case is remanded with directions for the family court to include the $48,000 that respondent had in savings in its child support calculation to the extent that it is equitable to do so. Therefore, we decline petitioner's invitation to revisit our affirmation of the family court's finding that respondent should not have income attributed to him.

In the alternative, petitioner argues that the family court erred in not following this Court's directions to include the $48,000 in its child support calculation for the period when respondent

---

[5]*Cassandra W.* 2015 WL 3448211, at *3.

was unemployed. In *Cassandra W.*, we remanded the case for a new hearing and directed "the family court [to] consider [Scott M.]'s savings [of $48,000] . . . to determine child support." 2015 WL 3448211, at *5. We gave the family court discretion as to the extent that respondent's savings were included in the child support obligation based on the liquidity of the funds and respondent's expenses during his unemployment. *Id.*

Despite our directive, we find that the family court failed to make findings on the liquidity of the $48,000 respondent had in his savings account and on respondent's expenses. Rather, the family court found that the $48,000 should not be included in the child support calculation based on respondent's testimony that he earned the $48,000 while previously working in Afghanistan. The family court accepted respondent's argument that, because he was paying support during his employment in Afghanistan, the funds in his savings account were included in a prior child support calculation and should not be included in a second calculation.

We find that the family court abused its discretion in finding that the $48,000 should not be included in a second child support calculation, having previously rejected the legal basis for such a finding in *Cassandra W.* In *Cassandra W.*, we explained that when an obligor parent is terminated from his job involuntarily and the income attribution statute does not apply—as in this case—a child support order may be based on that parent's other financial resources during the period of unemployment. *Cassandra W.*, 2015 WL 3448211, at *5; *see Adkins*, 221 W.Va. at 609, 656 S.E.2d at 54. West Virginia Code § 48-11-101(b) provides, in pertinent part, as follows:

> Payments of child support are to be ordinarily made from a party's income, *but in cases when the income is not sufficient to adequately provide for those payments, the court may, upon specific findings set forth in the order, order the party required to make those payments to make them from the corpus of his or her separate estate.*

(emphasis added). For the purposes of this case, we find that the $48,000 that respondent had in his savings account at the time of his petition for modification represents the corpus of his separate estate.[6]

We now address the two factors we directed the family court to consider in determining the extent to which the $48,000 should be included. With regard to the liquidity of the funds, bank records provided by respondent reflect that he has a savings account that imposes a monthly fee whenever the minimum daily balance is under $15,000. However, the monthly fee is only $20.

---

[6]Respondent's bank records reflect that his savings account is also in his present wife's name. Respondent did not raise this as an issue until the October 20, 2015, hearing despite petitioner's argument in *Cassandra W.* that the $48,000 should be used to support the parties' child. See 2015 WL 3448211, at *5. Even assuming, *arguendo*, that respondent timely raised this issue, we find that the $48,000 belonged to respondent, and not to his present wife. As the family court noted, respondent testified that he earned the $48,000 during "[his] previous employment." Accordingly, the family court found that the savings were accumulated "during [respondent's] contract employment in Afghanistan."

Thus, we find that the $48,000 in respondent's savings account was available to be used to support the parties' child. With regard to respondent's expenses, respondent testified that he supported himself using the funds in his savings account but did not provide any details on such expenses. Therefore, we (1) reverse the determination that petitioner had a child support obligation for the period from June 1, 2014, to September 30, 2014; and (2) remand the case to the family court for (a) a new hearing and specific findings regarding respondent's expenses during his unemployment; and (b) a child support calculation for the period from June 1, 2014, to September 30, 2014, which shall include the $48,000 to the extent that such inclusion is equitable in light of the parental obligation to provide support to the parties' dependent child. *See Adkins*, 221 W.Va. at 609, 656 S.E.2d at 54.

### Period from October 1, 2014 to December 31, 2014.

Petitioner contends that the pay stubs attached to respondent's July 22, 2015, financial disclosure reflect that his testimony of what he has earned since returning to employment is not credible. "An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). Respondent argues that we should defer to the family court's determinations of the credibility of his testimony, as we did in *Cassandra W.*, 2015 WL 3448211, at *3.

Respondent testified that he worked for a company called NKG from October of 2014 to December of 2014 and then began working for BMJ Construction in January of 2015. We find that respondent's pay stubs relied on by petitioner to show that respondent's testimony was not credible are only from the period of his employment with BMJ Construction. There are no pay stubs from the period during which respondent worked for NKG. Respondent testified that, during his employment with NKG, he earned $19 per hour, plus approximately five hours of overtime per week at time and a half. Therefore, we find that the family court did not clearly err in calculating child support obligation for the period from October 1, 2014 to December 31, 2014, based on respondent's testimony, as it was the only evidence as to his earnings during that period.

However, we find that the family court was incorrect in finding that $171 should be included in the child support calculation as the amount of overtime pay. Based on our own calculations of respondent's rate of pay and hours of overtime worked per week, we find that respondent earned $617.02 in overtime pay per month. Pursuant to West Virginia Code § 48-1-228(b)(6), inclusion of overtime pay is capped at 50%. When $617.92 is divided by two, the result is $308.51. As reflected by the attached child support work sheet B, the inclusion of $308.51 per month in overtime pay in the child support calculation causes respondent's support obligation to rise to $104.63 per month.[7] Therefore, we reverse the determination that respondent has a child support obligation of $91.28 per month for the period from October 1, 2014, to December 31,

---

[7]Child support work sheet B for the period from October 1, 2014, to December 31, 2014, reflects that respondent had a monthly gross income of $3,601.84 ($3,293.33 in regular wages plus $308.51 in overtime pay).

2014, and remand this case to the family court for the entry of an order setting respondent's support obligation at $104.63 per month.

<u>Period commencing on January 1, 2015.</u>

Petitioner next asserts that respondent's pay stubs from BMJ Construction reflect that respondent has earned more bonus pay than the $83.33 per month that the family court included in its child support calculation for the period commencing on January 1, 2015. The pay stubs are from consecutive pay periods ending July 9, 2015. Each pay stub shows no bonuses being paid in the "current" period and $1,000 being paid "year-to-date." Thus, respondent's pay stubs show that he was paid $1,000 in bonuses through July 9, 2015, which is the amount that the family court used in its calculation ($1,000 ÷ 12 months = $83.33). Therefore, we find that, based on the pay stubs, respondent earned $83.33 per month in bonus pay through July 9, 2015, and reject petitioner's argument that the pay stubs show respondent earning more than that amount.

However, we agree with petitioner that the family court erred in finding that respondent earned only a total of $1,000 in bonus pay for 2015. At the October 20, 2015, hearing, respondent testified that he earned a performance bonus of $500 each time a job was completed on time and under budget and that he was paid a performance bonus approximately four times in 2015. Five hundred dollars multiplied by four equals $2,000. Thus, we find that the amount that should be used in the child support calculation is $166.67 ($2,000 ÷ 12 months = $166.67). As reflected by the attached child support work sheet B, the inclusion of $166.67 per month in bonus pay in the child support calculation causes respondent's support obligation to rise to $20.77 per month.[8] Therefore, we reverse the determination that respondent has a child support obligation of $11.98 per month for the period commencing on January 1, 2015, and remand this case to the family court for the entry of an order setting respondent's support obligation at $20.77 per month.

In summary, and for the foregoing reasons, we reverse the circuit court's December 9, 2015, order that denied petitioner's appeal from the family court's November 6, 2015, order. With regard to the July 15, 2014, order, we (1) reverse the family court's determination that petitioner pay respondent $380.70 per month in child support for the period from June 1, 2014, to September 30, 2014; (2) reverse the family court's determination that respondent pay petitioner $91.28 per month in child support for the period from October 1, 2014 to December 31, 2014; and (3) reverse the family court's determination that respondent pay petitioner $11.98 per month in child support for the period commencing on January 1, 2015. With regard to the period from June 1, 2014, to September 30, 2014, we remand the case to the family court for (a) a new hearing and specific findings regarding respondent's expenses during his unemployment; and (b) a child support calculation for the period from June 1, 2014, to September 30, 2014, that shall include the $48,000 that respondent had in his savings account at the time of his petition for modification, to the extent that such inclusion is equitable in light of respondent's parental obligation to provide support to the parties' child. With regard to the period from October 1, 2014, to December 31, 2014, we remand

---

[8]Child support work sheet B for the period commencing on January 1, 2015, reflects that respondent has a monthly gross income of $2,766.67 ($2,600 in regular wages plus $166.67 in bonus pay).

the case for the entry of an order setting respondent's child support obligation at $104.63 per month in accordance with the worksheets attached hereto. With regard to the period commencing on January 1, 2015, we remand the case to the family court for the entry of an order setting respondent's child support obligation at $20.77 per month also in accordance with the worksheets attached hereto.

Reversed and Remanded with Directions.

**ISSUED**: **September 23, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

## Worksheet B:  EXTENDED SHARED PARENTING

IN THE FAMILY COURT OF_____ COUNTY, WEST VIRGINIA

CASE NO._____

Mother: Period          commencing on_____  SS No.:_____

Father: Jan. 1, 2015_____          SS No.:_____

| Children | SSN | Date of Birth | Children | SSN | Date of Birth |
|---|---|---|---|---|---|
| Child | | | | | |
| | | | | | |
| | | | | | |

| PART I. BASIC OBLIGATION | Mother | Father | Combined |
|---|---|---|---|
| 1.  MONTHLY GROSS INCOME (Exclusive of overtime compensation) | $3,528.00 | $2,766.67 | |
| a.  Minus preexisting child support payment | $0.00 | $0.00 | |
| b.  Minus maintenance paid | $0.00 | $0.00 | |
| c.  Plus overtime compensation, if not excluded, and not to exceed 50%, pursuant to W. Va. Code §48-1-228(b)(6) | $0.00 | $0.00 | |
| d.  Additional dependent deduction | ($402.75) | $0.00 | |
| 2.  MONTHLY ADJUSTED GROSS INCOME | $3,125.25 | $2,766.67 | $5,891.92 |
| 3.  PERCENTAGE SHARE OF INCOME (Each parent's income from line 2 divided by Combined Income) | 53.04% | 46.96% | 100% |
| 4.  BASIC OBLIGATION (Use Line 2 combined to find amount from Child Support Schedule) | | | $735.00 |
| **PART II. SHARED CUSTODY ADJUSTMENT** | | | |
| 5.  Shared Parenting Basic Obligation (line 4 x 1.50) | | | $1,102.50 |
| 6.  Each Parent's Share (Line 5 x each parent's line 3) | $584.77 | $517.73 | |
| 7.  Overnights with Each Parent (must total 365) | 183 | 182 | 365 |
| 8.  Percentage with Each Parent (Line 7 divided by 365) | 50.14% | 49.86% | 100% |
| 9.  Amount Retained (Line 6 x line 8 for each parent) | $293.18 | $258.16 | |
| 10. Each Parent's Obligation (Line 6 - Line 9) | $291.58 | $259.58 | |
| 11. AMOUNT TRANSFERRED FOR BASIC OBLIGATION (Subtract smaller amount on line 10 from larger amount on line 10.  Parent with larger amount on line 10 owes the other parent the difference. Enter $0 for other parent. | $32.01 | $0.00 | |
| **PART III. ADJUSTMENTS FOR ADDITIONAL EXPENSES** (Expenses paid directly by each parent.) | | | |
| 12a. Work Related Child Care Costs Adjusted for Federal Tax Credit (0.75 x actual work-related child care costs) | $0.00 | $0.00 | |
| 12b. Extraordinary Medical Expenses (Uninsured only) and Children's Portion of Health Insurance Premium Costs | $112.39 | $0.00 | |
| 12c. Extraordinary Additional Expenses (Agreed to by parents or by order of the court) | $0.00 | $0.00 | |
| 12d.  Minus Extraordinary Adjustments (Agreed to by parents or by order of the court) | $0.00 | $0.00 | |
| 12e. Total Adjustments (For each column, add 12a, 12b, and 12c.  Subtract Line 12d. Add the parent's totals together for Combined amount.) | $112.39 | $0.00 | $112.39 |
| 13. Each Parent's Share of Additional Expenses (Line 3 x line 12e combined) | $59.61 | $52.78 | |
| 14. Each Parent's Net Share of Additional Direct Expenses (Each parent's line 13 - line 12e. If negative number, enter $0) | $0.00 | $52.78 | |
| 15. AMOUNT TRANSFERRED FOR ADDITIONAL EXPENSES (Subtract smaller amount on line 14 from larger amount on line 14.  Parent with larger amount on line 14 owes the other parent the difference.  Enter $0 for the other parent.) | $0.00 | $52.78 | |

A Monthly      Support would be  $ 20.77

CivilWare, Copyright 2004, LawTech LLC, (304) 842-0179

## Worksheet B: EXTENDED SHARED PARENTING

| PART IV. RECOMMENDED CHILD SUPPORT ORDER | Mother | Father | |
|---|---|---|---|
| 1. TOTAL AMOUNT TRANSFERRED (Line 11 + line 15) | $32.01 | $52.78 | |
| 17. RECOMMENDED CHILD SUPPORT ORDER (Subtract smaller amount on line 16 from larger amount on line 16. Parent with larger amount on line16 owes the other parent the difference.) | $0.00 | $20.77 | |
| * Adjustment for obligor's social security benefits sent directly to the child | $0.00 | $0.00 | |
| ** NET RECOMMENDED CHILD SUPPORT ORDER (Line 17- line 17*) | $0.00 | $20.77 | |
| Comments, calculations, or rebuttals to schedule or adjustments | | | |
| PREPARED BY: | | Date: | |

A Monthly    Support would be   $ 20.77

CivilWare, Copyright 2004, LawTech LLC, (304) 842-0179

## Worksheet B: EXTENDED SHARED PARENTING

IN THE FAMILY COURT OF_____ COUNTY, WEST VIRGINIA

CASE NO. _____

Mother: Period from    Oct. 1, 2014     SS No.: _____

Father: To    Dec. 31, 2014     SS No.: _____

| Children | SSN | Date of Birth | Children | SSN | Date of Birth |
|---|---|---|---|---|---|
| Child | | | | | |
| | | | | | |
| | | | | | |

| PART I. BASIC OBLIGATION | Mother | Father | Combined |
|---|---|---|---|
| 1. MONTHLY GROSS INCOME (Exclusive of overtime compensation) | $3,528.00 | $3,601.84 | |
| a. Minus preexisting child support payment | $0.00 | $0.00 | |
| b. Minus maintenance paid | $0.00 | $0.00 | |
| c. Plus overtime compensation, if not excluded, and not to exceed 50%, pursuant to W. Va. Code §48-1-228(b)(6) | $0.00 | $0.00 | |
| d. Additional dependent deduction | ($402.75) | $0.00 | |
| 2. MONTHLY ADJUSTED GROSS INCOME | $3,125.25 | $3,601.84 | $6,727.09 |
| 3. PERCENTAGE SHARE OF INCOME (Each parent's income from line 2 divided by Combined Income) | 46.46% | 53.54% | 100% |
| 4. BASIC OBLIGATION (Use Line 2 combined to find amount from Child Support Schedule) | | | $806.00 |
| **PART II. SHARED CUSTODY ADJUSTMENT** | | | |
| 5. Shared Parenting Basic Obligation (line 4 x 1.50) | | | $1,209.00 |
| 6. Each Parent's Share (Line 5 x each parent's line 3) | $561.70 | $647.30 | |
| 7. Overnights with Each Parent (must total 365) | 183 | 182 | 365 |
| 8. Percentage with Each Parent (Line 7 divided by 365) | 50.14% | 49.86% | 100% |
| 9. Amount Retained (Line 6 x line 8 for each parent) | $281.62 | $322.76 | |
| 10. Each Parent's Obligation (Line 6 - Line 9) | $280.08 | $324.54 | |
| 11. AMOUNT TRANSFERRED FOR BASIC OBLIGATION (Subtract smaller amount on line 10 from larger amount on line 10. Parent with larger amount on line 10 owes the other parent the difference. Enter $0 for other parent. | $0.00 | $44.45 | |
| **PART III. ADJUSTMENTS FOR ADDITIONAL EXPENSES** (Expenses paid directly by each parent.) | | | |
| 12a. Work Related Child Care Costs Adjusted for Federal Tax Credit (0.75 x actual work-related child care costs) | $0.00 | $0.00 | |
| 12b. Extraordinary Medical Expenses (Uninsured only) and Children's Portion of Health Insurance Premium Costs | $112.39 | $0.00 | |
| 12c. Extraordinary Additional Expenses (Agreed to by parents or by order of the court) | $0.00 | $0.00 | |
| 12d. Minus Extraordinary Adjustments (Agreed to by parents or by order of the court) | $0.00 | $0.00 | |
| 12e. Total Adjustments (For each column, add 12a, 12b, and 12c. Subtract Line 12d. Add the parent's totals together for Combined amount.) | $112.39 | $0.00 | $112.39 |
| 13. Each Parent's Share of Additional Expenses (Line 3 x line 12e combined) | $52.22 | $60.17 | |
| 14. Each Parent's Net Share of Additional Direct Expenses (Each parent's line 13 - line 12e. If negative number, enter $0) | $0.00 | $60.17 | |
| 15. AMOUNT TRANSFERRED FOR ADDITIONAL EXPENSES (Subtract smaller amount on line 14 from larger amount on line 14. Parent with larger amount on line 14 owes the other parent the difference. Enter $0 for the other parent.) | $0.00 | $60.17 | |

A Monthly     Support would be   $ 104.63

CivilWare, Copyright 2004, LawTech LLC, (304) 842-0179

## Worksheet B: EXTENDED SHARED PARENTING

| PART IV. RECOMMENDED CHILD SUPPORT ORDER | Mother | Father | |
|---|---|---|---|
| TOTAL AMOUNT TRANSFERRED (Line 11 + line 15) | $0.00 | $104.63 | |
| RECOMMENDED CHILD SUPPORT ORDER (Subtract smaller amount on line 16 from larger amount on line 16. Parent with larger amount on line16 owes the other parent the difference.) | $0.00 | $104.63 | |
| * Adjustment for obligor's social security benefits sent directly to the child | $0.00 | $0.00 | |
| ** NET RECOMMENDED CHILD SUPPORT ORDER (Line 17- line 17*) | $0.00 | $104.63 | |
| Comments, calculations, or rebuttals to schedule or adjustments | | | |
| PREPARED BY: | | Date: | |

A Monthly      Support would be  $ 104.63

CivilWare, Copyright 2004, LawTech LLC, (304) 842-0179